GREAT ATLANTIC & PACIFIC TEA COMPANY, INC., appellee, v. HILL-DODGE BANKING COMPANY, appellant.

No. 50951.

(Reported in 122 N.W.2d 337)

June 11, 1963.

Boyd, Walker & Concannon, of Keokuk, for appellant.

McManus & McManus and George L. Norman, all of Keokuk, for appellee.

PETERSON, J.—The question presented is whether the District Court of Lee County obtained jurisdiction over a foreign corporation, in connection with a case involving an alleged tort, partially committed in Iowa.

Defendant raises no question about the service of notice. In its Reply Brief appellant states: "* * * there is no dispute that service of notice was had upon the appellant foreign corporation as provided by Rule of Civil Procedure 56(f)."

The Lee County court held jurisdiction was acquired in the case, and overruled the special appearance filed by defendant. Appeal was granted by this court from interlocutory order in accordance with the provisions of R. C. P. 332. Defendant appealed.

I. On February 21, 1962, plaintiff filed petition in the District Court of Lee County, at Keokuk, in which it alleged that plaintiff is a corporation duly engaged in business in Lee County and that defendant is a banking corporation conducting business in the town of Warsaw, Illinois. Warsaw is located immediately across the Mississippi River from Keokuk. For some years past a customer of defendant-bank by the name of Seabold had a checking account therein, and during said time had written numerous checks which were cashed by plaintiff and

were honored and paid by defendant-bank. During the months of June and July 1960 said depositor was hard pressed for funds and with the aid, approval, connivance and consent of defendant, the defendant and said customer commenced a fraudulent scheme known as "check-floating" and continued said scheme until August 17, 1961. At said time payment of checks was stopped and defendant was damaged through such uncashable checks in the amount of $1977.59.

Plaintiff contends defendant honored and paid checks of this depositor when there were insufficient funds in his account at the time of presentation and that money to pay said deficiency was subsequently raised by Seabold issuing other checks, all with the approval and knowledge of defendant; that by engaging in such activities the defendant concealed from plaintiff the true state of the depositor's account, and that concealment of the condition of the depositor's account was done with the intent to deceive and defraud plaintiff; that plaintiff relied thereon and was induced to continue to cash many checks of said depositor, which it would not have done if it had known the true state of facts, and that by reason of such fraud plaintiff was damaged. Plaintiff alleges defendant was negligent in knowingly permitting a bank depositor to commence and continue a check-floating scheme by the use of its banking facilities, and by failing to dishonor said checks at the inception of the scheme, and by failing to notify plaintiff of the insolvent condition of Seabold's account.

On April 11, 1962, defendant filed special appearance objecting to the jurisdiction of the court, in which it alleged that defendant was a foreign corporation, not licensed to and was not doing business in the State of Iowa so as to be amenable to service of process in Iowa. Defendant alleges the action is in personam against a foreign corporation and that the acts upon which the action is based occurred outside the State of Iowa and that the District Court of Lee County, Iowa, has no jurisdiction, and any judgment rendered would be void. The special appearance is supported by affidavits stating that defendant is a nonresident foreign corporation, not engaged in business in the state of Iowa other than to own mortgages on real estate and personal property and the officers upon whom the notice was

served stated they were not conducting any business of defendant in the State of Iowa at the time of service.

Plaintiff filed counteraffidavit stating defendant banking corporation had been recording real-estate and chattel mortgages in Lee County, Iowa, and had resorted to the courts of Iowa on occasions to collect the notes and enforce the mortgages.

On November 6, 1962, the court entered an order in which it overruled defendant's special appearance, under the theory of minimum contacts in Iowa and also under section 617.3 of the Code, as amended.

II. Fifty years ago the question of jurisdiction in the state courts as to foreign corporations was not important. The use of corporate entities was very rare. As business conditions became more complex more corporations were organized in all the states of our Union. For some years this also was not important because the business was ordinarily confined to the state in which a corporation was formed. After some years the matter of the jurisdiction of the courts of a sister state did become important because the activities of corporations soon reached far beyond the boundaries of their home state.

The matter was well stated in the United States Supreme Court case of McGee v. International Life Insurance Co. (1957), 355 U. S. 220, 222, 78 S. Ct. 199, 201, 2 L. Ed.2d 223, 226. In this case the doctrine of minimum contacts of a foreign corporation within a state was discussed. We will consider this doctrine, infra. The court found that defendant had such adequate contact with the forum as to be subject to a suit for a cause of action based on a contract which was substantially connected with the state. The court speaking of the policy behind the trend toward expansion of permissible state jurisdiction over foreign corporations stated: "In part this is attributable to the fundamental transformation of our national economy over the years. * * * With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity."

III. We have recently considered the question of Iowa jurisdiction in connection with foreign corporations which have not filed application for authority to do business in Iowa. Our pronouncement was made in the case of Hill v. Electronics Corporation of America, 253 Iowa 581, 113 N.W.2d 313, in which the court spoke through Chief Justice Garfield. The case involved a suit by an Iowa citizen against one Massachusetts corporation and one New York corporation. It involved the explosion of a boiler in Meredith Publishing Company plant in Des Moines. The explosion resulted in serious personal injuries to plaintiff. The trial court sustained special appearance with reference to the jurisdiction of the Polk County, Iowa, District Court as to the two corporations involved. The court was confronted with the especially restrictive provisions of what is now section 496A.103 of the Code. In said section appears ten paragraphs outlining actions of foreign corporations which exempt such corporations as to jurisdiction of Iowa courts. There were three activities of the foreign corporation defendants in the Hill case which excluded the corporations from the jurisdiction of the Iowa court.

However, we adopted an optimistic attitude as to extension of the area in which jurisdiction of a foreign corporation should be acceptable. After citing the pivotal case of International Shoe Co. v. State of Washington, 326 U. S. 310, 66 S. Ct. 154, 90 L. Ed. 95, 161 A. L. R. 1057, we said: "The Shoe Company case applies a new yardstick by which a state may acquire personal jurisdiction over a foreign corporation without violating due process under the Federal Constitution. It holds 'due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ' " (Pages 587, 588 of 253 Iowa.)

The doctrine of minimum contact was analyzed and established in the International Shoe Company case. There had been considerable confusion and conflicting decisions in many states with reference to the question of the jurisdiction of a state in

which a foreign corporation was doing business of some kind without complying with statutes of the state.

International Shoe Company had been conducting business in the State of Washington for some years. It had developed its business in the state to the point where it had from eleven to thirteen salesmen traveling and living in the state. The State of Washington had adopted an unemployment tax Act. Under the Act a certain fee was levied by the state upon any person, company or corporation engaged in business within the state. Such tax was levied by the State of Washington against International Shoe Company, a foreign corporation.

The Supreme Court of the United States conclusively decided there was no violation of the due process clause of the Constitution in the levy by the State of Washington of such tax against International Shoe Company. The court said: "Due process, where an action may be commenced by personal service of summons or other form of notice, does not require, in order to subject a defendant to a judgment in personam, that he be present within the territorial jurisdiction of the court, if he have such contacts with the territorial forum that the maintenance of the suit does not offend 'traditional notions of fair play and sustantial justice.' "

In addition to holding that State jurisdiction over the activities of the International Shoe Company did not violate the due process clause of the Constitution, the case also holds such activities established minimum contacts in the State of Washington, sufficient to relegate the foreign corporation to the jurisdiction of the state courts. The same would be true as to the case at bar, if it were not for the restrictions contained in section 496A.103. We will consider that question later in this division.

Several cases have been decided since the International Shoe Company case in support of the important questions involved in the case. McGee v. International Life Ins. Co., 355 U. S. 220, 78 S. Ct. 199, 2 L. Ed.2d 223; Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761; Beck v. Spindler, 256 Minn. 543, 99 N.W.2d 670.

It is essential and just that we enlarge the scope of the jurisdiction of our state with reference to foreign corporations

which do not comply with statutes as to doing business in the state. The business of the nation is being carried on more and more by corporate entities.

The rather harsh and very restrictive provisions of section 496A.103 should be relaxed. This is recognized by comments on the section appearing in Volume 28B of I. C. A. on page 114, which states: "Thus, unless and until the Legislature of Iowa amends Section 496A.103 to state that the activities mentioned in Section 496A.103 as not constituting the transaction of business apply only for the purpose of determining whether the foreign corporation in question need obtain a certificate of authority in Iowa and do not apply for the purpose of determining whether it is amenable to judicial jurisdiction in Iowa, the scope of the International Shoe Company case is restricted in Iowa. This restriction exists even though in the Hill case the Iowa Supreme Court expressly noted its approval of the broadened concept of jurisdiction over foreign corporations expressed in the International Shoe Company case."

We expressed another optimistic view in the Hill case at page 588 of 253 Iowa as follows: "We deem it proper to express approval of a broadened concept of jurisdiction over foreign corporations, especially in actions to enforce obligations arising out of their activities within the state. However, * * * we must upon this appeal abide by the provisions of chapter 321, Laws of the 58th General Assembly, and affirm the trial court's denial of jurisdiction over these specially appearing defendants."

In the same manner that we were confronted with the provisions of said section in the Hill case and had no choice but to affirm the trial court, we are similarly confronted in this case with two exemption paragraphs of section 496A.103:

"1. Maintaining or defending any action or suit or any administrative or arbitration proceeding, or effecting the settlement thereof or the settlement of claims or disputes. * * *

"8. Securing or collecting debts due it or enforcing any rights in property securing the same."

Defendant engaged in these activities in Lee County, Iowa.

We cannot affirm the trial court as to its ruling on the special appearance *on this phase of the case.* (Emphasis ours.)

IV. The Fifty-ninth General Assembly took a forward step in this field when it adopted chapter 287 as one of its Acts. Under the provisions of this Act we can affirm the ruling of the trial court. The chapter was adopted as an amendment to Code section 617.3 of the 1958 Code. The part of the Act pertinent to the case at bar is as follows:

"If a foreign corporation makes a contract with a resident of Iowa to be performed in whole or in part by either party in Iowa, or if such foreign corporation commits a tort in whole or in part in Iowa against a resident of Iowa, such acts shall be deemed to be doing business in Iowa by the foreign corporation * * *. The making of the contract or the committing of the tort shall be deemed to be the agreement of the foreign corporation that any process or original notice against it which is * * * served upon the secretary of state shall be of the same legal force and effect as if served personally within the state of Iowa."

In the case at bar personal service was secured by personally serving its officers in Iowa.

This Act of the Fifty-ninth General Assembly was referred to in the Hill case, but since the case had been decided in the trial court before the Act became effective, the Act could not be applied in the decision in this court. In referring to the Act, however, we stated in the Hill case: "It establishes a new basis for jurisdiction over a foreign corporation."

With reference to the question of jurisdiction the facts of each case must be considered in order to arrive at a proper conclusion. We hold chapter 287 of the Acts of the 59th G. A. is effective as to the facts in the case at bar.

In this appeal we cannot pass upon the merits of the case. For the purpose of the special appearance we accept the petition as true. Paul L. Seabold was a businessman in Keokuk. His business was known as Seabold Contract Carriers. He had a checking account in defendant-bank. He wrote numerous checks for large amounts which were cashed by plaintiff. During June and July 1961 he wrote checks without sufficient funds. With defendant's approval, knowledge and connivance he commenced a tortuous, fraudulent and unlawful scheme known as "check-floating". This was continued until August 17, 1961, when the

scheme, too late, was discontinued. Plaintiff was damaged as heretofore alleged. The record discloses that nine other persons or companies in Keokuk were similarly defrauded, and sued defendant. We assume such cases are pending, awaiting the decision in this case.

We hold this tort was partially committed in Iowa. Mr. Seabold presented his checks to plaintiff at its place of business in Keokuk. Plaintiff cashed them. Cashing the checks in Iowa was an integral part of the tort with which defendant is charged. The acts committed, with the connivance of defendant, were clearly partially committed in Iowa.

The order of the trial court overruling the special appearance is affirmed.—Affirmed.

All JUSTICES concur.