Mary Ann CLAY, Wilbur S. Clay, and Ollie James Clay, an infant by his father and next friend, Wilbur S. Clay, Plaintiffs,

v.

HOPPERTON NURSERY, INC., Ferguson Fumigants, Inc., a corporation and Sexton Can Company, a corporation, Defendants.

Civ. A. No. 80–168.

United States District Court,
E. D. Kentucky,
Covington Division.

March 9, 1982.

Peter G. DePrez, Shelbyville, Ind., William A. Miller, Sr., Louisville, Ky., for plaintiffs.

Thomas C. Smith, Covington, Ky., for Hopperton Nursery.

Donald L. Stepner, Covington, Ky., for Ferguson Fumigants.

Douglas H. Morris, II, Louisville, Ky., for Sexton Can Co.

## MEMORANDUM OPINION AND ORDER

BERTELSMAN, District Judge.

In this serious products liability case, the court is called upon to apply principles enunciated in certain recent decisions concerning long-arm jurisdiction.

### Background

Plaintiffs bring this action, alleging that they were lessees of a house owned by the defendants Hopperton. Plaintiffs further allege that there were stored in the basement of this leased dwelling several cans of a powerful chemical insecticide labeled Zytox manufactured by the defendant Ferguson Fumigants. This chemical leaked from one canister, plaintiffs claim, with the result that they inhaled the fumes and suffered serious injury. Defendant Ferguson Fumigants manufactured and sold the insecticide, and the defendant Sexton Can Company manufactured the containers. Service on Ferguson was obtained through the Secretary of State of Kentucky, pursuant to Kentucky's long-arm statute, KRS 454.210.

Ferguson has filed a motion to dismiss, vigorously objecting on constitutional due

process grounds to the exercise of personal jurisdiction over it in a Kentucky court under the circumstances here presented.

The Hoppertons, who operated a nursery business, purchased the Zytox from Ferguson in the following manner. Ferguson admits that it regularly advertises the product in a certain trade journal for nurserymen, which has nationwide circulation. An affidavit from the publisher reveals that there are 152 subscribers to this magazine in Kentucky. An ad run by Ferguson promoting Zytox in the journal contained a return coupon by which an interested party could obtain more information about the product.

Mr. Hopperton states in an affidavit that he has some recollection of seeing this ad, but it was not by returning the coupon that he ordered the product. Rather, he encountered a booth operated by Ferguson at a trade show in Wisconsin. At this trade show, he ordered the Zytox which ultimately came to be stored in his basement. Arrangements were made for shipment of the product to Hopperton's nursery in Kentucky, and it was delivered apparently by common carrier. Hopperton made an agreement with the Ferguson salesman that a representative of the company would come to Kentucky and supervise the use of the powerful insecticide, but all parties agree that the representative never arrived. Nor did any other employee of Ferguson ever come to Kentucky in connection with this transaction. Also, it is admitted that Ferguson has solicited no other sales of its product for use in Kentucky and carries on no activities here other than the ones described above. Hopperton never used the insecticide, but it remained in the basement of his house and was still there when he leased the house to the plaintiffs.

■ Thus, it can be seen that Ferguson's contacts with Kentucky are somewhat more limited than we usually see in product cases where the personal jurisdiction issue arises.

Nevertheless, the court believes and holds that an exercise of personal jurisdiction over Ferguson in the above-described situation is appropriate and that its motion to dismiss must be denied.

### State Law

■ Our analysis begins with the proposition that a federal district court, in determining whether an exercise of long-arm jurisdiction over a non-resident defendant is authorized, must first consider the law of the state in which it is sitting.[1] If the state long-arm statute would extend the jurisdictional reach of its courts to the non-resident defendant, the court must then inquire whether this extension of jurisdiction is consistent with due process.[2] It has been said that, where the state legislature has authorized the state courts to reach to the full constitutional limits in pursuing the non-resident defendant, these two inquiries become one.[3]

Under the facts above described, the following provisions of KRS 454.210 provide an arguable basis for the exercise of personal jurisdiction over Ferguson in this case.

"(2)(a) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:

\* \* \* \* \* \*

"2. *Contracting to supply services or goods in this Commonwealth;*

\* \* \* \* \* \*

"4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does *or solicits* business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of

---

**1.** *Poyner v. Erma Werke GMBH*, 618 F.2d 1186 (6th Cir. 1980); *In-Flight Devices Corporation v. Van Dusen Air, Inc.*, 466 F.2d 220 (6th Cir. 1972).

**2.** *Poyner v. Erma Werke GMBH*, 618 F.2d at 1188.

**3.** *Id.*

conduct or derivation of substantial revenue within the Commonwealth;

"5. Causing injury in this Commonwealth to any person by breach of warranty expressly or impliedly made in the sale of goods outside this Commonwealth when the seller knew such person would use, consume, or be affected by, the goods in this Commonwealth, if he also *regularly* does *or solicits* business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth." (Emphasis added.)

■ Subsection (2)(a)(2) of the above statute by its express terms authorizes a Kentucky court to exercise jurisdiction over Ferguson in this case. Ferguson did contract to supply the insecticide and advice on how to utilize it in this Commonwealth.[4]

■ Further, although it is doubtful that it could be said that Ferguson derives substantial revenue from goods or services distributed in the Commonwealth, the criteria set forth in subsections 4 and 5 of KRS 454.210(2)(a) are in the alternative, rather than the conjunctive, and Ferguson's regular advertising in the trade journal satisfies the requirement contained therein of regularly soliciting business. It should be noted that such regular course of conduct is not required under Subsection 2, under which a single incident of supplying goods or services in the Commonwealth is sufficient to

be a basis for the exercise of personal jurisdiction.

■ The decisions of the Kentucky state courts and Kentucky's federal courts make clear that the accepted construction of the statute is that the advertising by and the actual knowledge of the defendant Ferguson in this case that the product was to be used in Kentucky is sufficient to make it subject to the long-arm jurisdiction of the courts of this Commonwealth.[5]

*The Due Process Issue*

Prior to the decision of the Supreme Court of the United States in *World-Wide Volkswagen Corp. v. Woodson,*[6] there would have been little doubt that the exercise of personal jurisdiction over Ferguson in this case could not be challenged under the due process clause. Defendant Ferguson relies heavily on that case, however, contending that *World-Wide* narrows the expansive view many courts had been taking with regard to long-arm jurisdiction. Particularly, Ferguson contends, *World-Wide* stands for the proposition that foreseeability that a product will be used in a particular state is not enough to subject the non-resident manufacturer to suit in that state consistent with the due process clause, contrary to the holding of many courts prior to that decision.[7]

Without commenting on the effect of *World-Wide* in other fact situations, the

**4.** The Kentucky courts hold that personal jurisdiction may be more readily applied over a non-resident seller than a non-resident buyer. *Tube Turns Division of Chemetron Corporation v. Patterson Company, Inc.,* 562 S.W.2d 99 (Ky. App.1978).

**5.** In addition to the authorities above cited, *see Conley v. Sousa,* 554 S.W.2d 87 (Ky.1977); *Volvo of America Corporation v. Wells,* 551 S.W.2d 826 (Ky.App.1977); *Miller v. Trans World Airlines, Incorporated,* 302 F.Supp. 174 (E.D.Ky.1969); *Carmichael-Lynch-Nolan Advertising Agency, Inc. v. Bennett Associates, Inc.,* 561 S.W.2d 99 (Ky.App.1977). The *Volvo* case, *supra,* involved advertising in Kentucky by the manufacturer of an automobile. In addition, the manufacturer had dealers in Kentucky authorized to service the automobiles, although the automobile involved in the case had been purchased from a dealer in West

Virginia. The actual knowledge of the defendant in the case at bar that the product would be used in Kentucky and its agreement to supply instruction in Kentucky on how to use it is at least an equally strong contact with the state, as is the maintenance of the authorized service dealerships by the defendant manufacturer in the *Volvo* case.

**6.** 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

**7.** *See e.g., Eyerly Aircraft Company v. Killian,* 414 F.2d 591 (5th Cir. 1969) (carnival ride sold for use in itinerant shows); *Miller v. Trans World Airlines, Inc.,* 302 F.Supp. 174 (E.D.Ky. 1969) (instruments sold to all major airplane manufacturers, but not for specific distribution in Kentucky).

court does not believe it is of any avail to the defendant here. In *World-Wide*, the personal injury plaintiffs had purchased a new Audi automobile from a dealer in New York State. The following year, while driving the automobile in the State of Oklahoma, they were in a serious accident in which their children were severely burned. They brought a products liability action in an Oklahoma state court against the manufacturer, the importer, the New York regional distributor, and the retail dealer. The distributor and dealer challenged the personal jurisdiction of the Oklahoma court. The objecting defendants demonstrated that they neither did business in Oklahoma, nor shipped nor sold any products to that state, nor advertised in any media calculated to reach Oklahoma.

The plaintiffs in *World-Wide* argued that, because of the volume of Volkswagens sold and the inherent mobility of the product, it was foreseeable that some of the automobiles distributed and sold by the dealer in New York would in due course reach Oklahoma. Reversing the lower courts, the Supreme Court held that such foreseeability was insufficient, saying:

"*But the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.* See *Kulko v. California Superior Court, supra* [436 U.S. 84] at 97–98, [98 S.Ct. 1690, 56 L.Ed.2d 132]; *Shaffer v. Heitner*, 433 U.S. [186], at 216 [, 97 S.Ct. 2569, 53 L.Ed.2d 683,] and see *id.*, [433 U.S.] at 217–219 (Stevens, J., concurring in judgment). The Due Proc-

ess Clause, by ensuring the 'orderly administration of the laws,' *International Shoe Co. v. Washington*, 326 U.S. [310,] at 319 [66 S.Ct. 154, 90 L.Ed. 95,] gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.

"When a corporation 'purposefully avails itself of the privilege of conducting activities within the forum State,' *Hanson v. Denckla*, 357 U.S. [235,] at 253 [78 S.Ct. 1228, 2 L.Ed.2d 1283,] it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State. Hence if the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, *but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others.* The forum State does not exceed its powers under the Due Process Clause *if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.* Compare *Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill.2d 432, 176 N.E.2d 761 (1961)." [8]

---

8. 444 U.S. at 297–98, 100 S.Ct. at 567–68. In another part of the opinion, 444 U.S. at 292–94, 100 S.Ct. at 564–65, the Court stated that the "minimum contacts" test required for the constitutional exercise of long-arm jurisdiction was really a shorthand way of describing a process of balancing the following factors:

    1. The burden on the defendant in litigating in the forum state;

    2. The forum state's interest in adjudicating the dispute;

    3. The plaintiff's interest in obtaining convenient and effective relief;

    4. The interstate judicial system's interest in obtaining the most efficient resolution of controversies;

    5. The shared interest of the several states in furthering fundamental substantive social policies; and

    6. That the states do not exceed their role in a workable federal system.

The emphasis in long-arm jurisdiction cases decided by the Supreme Court over the years has oscillated between the conflicting goals of protecting the interests of the plaintiff and the forum state, and insuring fairness to the nonresident defendant. In *International Shoe Company v. Washington*,[9] and *McGee v. International Life Insurance Company*,[10] the stress seemed to be on the *minimal* nature of the contact required. In *Hanson v. Denckla*,[11] *Shaffer v. Heitner*,[12] *Kulko v. California Superior Court*,[13] *Rush v. Savchuk*,[14] and most recently in *World-Wide*, the focus of the Court's scrutiny has shifted back to fairness to the nonresident defendant, achieved through the requirement that there must be some purposeful, positive act or series of acts on the basis of which it is not unfair to subject that defendant to suit in the forum state and on the basis of which he should be aware that he is subject to suit in that state.

This shifting of emphasis was adumbrated by our Sixth Circuit Court of Appeals some years ago in holding that the following are three constitutional prerequisites for the exercise of personal jurisdiction by a state over a nonresident:

"First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable."[15]

These factors continue to epitomize the proper approach in this area after *World-Wide*, as well as prior to it.

Turning once more to the present case, the court holds that all of these prerequisites are fulfilled by Ferguson's purposeful conduct. Contrary to the fact situation in *World-Wide*, there are present in the instant case "those affiliating circumstances that are a necessary predicate to [an] exercise of . . . jurisdiction."[16]

The defendant here did avail itself of the privileges and benefits of Kentucky law. Also, it did solicit business here through advertising reasonably calculated to reach the state. Most importantly, Ferguson sold the product directly to a Kentucky resident and contracted to deliver it to Kentucky and to provide an employee to give instructions in Kentucky on the proper use of the product. Although the employee never came to Kentucky, by such conduct the defendant purposefully availed itself of the privilege of acting in the forum state or causing a consequence here.[17] Such conduct should have made it aware it might be sued here. Also, the cause of action arose from the defendant's activities here, because of the presence of the product it shipped here. Finally, the acts of the defendant in shipping this potentially dangerous product to Kentucky and the serious nature of the harm allegedly caused by the product provide a substantial enough connection with Kentucky to make the exercise of jurisdiction over the defendant reasonable.

**9.** 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

**10.** 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

**11.** 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

**12.** 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977).

**13.** 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978).

**14.** 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980).

**15.** *Southern Machine Company v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). *See Poyner v. Erma Werke GMBH, supra; Thermothrift Industries, Inc. v. Mono-Therm Insulation Systems, Inc.*, 450 F.Supp. 398 (W.D. Ky.1978); *Kennedy v. Ziesmann*, 526 F.Supp. 1328 (E.D.Ky.1981).

**16.** 444 U.S. at 295, 100 S.Ct. at 566.

**17.** *Cf. Noel v. S. S. Kresge Co.*, 669 F.2d 1150 (6th Cir. 1982) (large order of pliers to a national chain of retail stores.)

For the above reasons, the motion of the defendant Ferguson to dismiss must be denied, and

IT IS SO ORDERED.