**BANK OF LOUISVILLE, Plaintiff,**

v.

**CALIFORNIA FIRST BANK,
Defendant.**

No. C 84–0313–L(B).

United States District Court,
W.D. Kentucky,
Louisville Division.

Jan. 10, 1986.

Kenneth H. Baker, James S. Scroghan, Louisville, for plaintiff.

Robert C. Hobson and Joseph C. Lenihan, of Woodward, Hobson & Fulton, Louisville, for defendant.

## MEMORANDUM

BOYCE F. MARTIN, Jr., Circuit Judge, Sitting by Designation.

In this diversity case, the claim is now before the Court on a motion to dismiss for lack of personal jurisdiction over the defendant.

In June 1980, the plaintiff Bank of Louisville in Louisville, Kentucky mailed a stock certificate for 1,002 shares of American Income Life Insurance Company to Marvin Landau in California. The stock certificate stated that the Bank of Louisville was the Transfer Agent and Registrar for the insurance company. Mr. Landau claims that he never received the stock certificate.

In March 1982, the Bank of Louisville received a letter purportedly from a San Diego attorney stating that the stock had been transferred to an Edward Walker and requesting that the Bank of Louisville, "[p]lease forward to this office, upon completion of certificate sale, the above referenced redemption value." Enclosed with this letter was the stock certificate indicating that Marvin Landau had signed over the certificate to Edward Walker. The defendant, California First Bank, guaranteed that Landau's signature was genuine. The Bank of Louisville then issued a new stock certificate in the name of Edward Walker. Walker eventually transferred the stock to another party.

California First Bank is a banking corporation chartered under the laws of California with its principal place of business in San Francisco. Although it has offices in Guam, Saipan, Nassau, and Tokyo, it does not have an office in any state other than California. The bank owns no physical property in Kentucky nor does it have any employees there. Members of the bank have called on prospective customers in Kentucky. One of the bank's calling officers stated that the bank conducted three types of transactions in Kentucky. First, the bank has obtained from one or more Kentucky banks participation in loans which the Kentucky banks have made to Kentucky residents; the borrower deals exclusively with the Kentucky bank. The second type of transaction is where California First Bank, acting through a Kentucky bank, with perhaps three or four other banks, enters into a loan arrangement with a Kentucky borrower; all business dealings

are handled by the Kentucky bank. The third type of transaction is the establishment of a line of credit for a Kentucky borrower. Transactions for this line of credit are handled from outside of Kentucky. The necessary documents are mailed from California to the Kentucky borrower, who signs them and returns them to the bank in California which then wires the money borrowed to the borrower's bank in Kentucky or New York. We note that none of the above-described transactions involves the guaranteeing of signatures on stock certificates.

■ In a diversity case, a federal court must look to the law of the forum state to determine the extent of its *in personam* jurisdiction. *In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 224 (6th Cir.1972). The plaintiff claims that jurisdiction here is authorized by Ky.Rev. Stat. § 454.210(2)(a) which states:

A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:

1. Transacting any business in this Commonwealth....

The limits of personal jurisdiction under this statute have been interpreted to be "coextensive with the boundaries of the due process clause." *Davis H. Elliot Co. v. Caribbean Utilities Co.*, 513 F.2d 1176, 1181 (6th Cir.1975). The inquiry thus becomes whether the minimum contacts test of *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), as applied in *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), and *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), is satisfied.

Our inquiry here has been limited by the Kentucky Legislature's specific guidance concerning what contacts by a non-Kentucky bank may be considered to be "transacting any business" in the state. Ky.Rev. Stat. § 287.670 lists numerous banking activities with an introductory clause stating that "[a]ny foreign lending institution, including but not limited to any foreign bank-

ing corporation, ... shall not be considered to be doing, transacting or carrying on business in this state solely by reason of engaging in any or all of the following activities." The activities will not be considered as "doing business" if they are carried on from outside Kentucky by the foreign bank or within the state by independent agencies on behalf of the foreign bank. As pertinent to this case, the listed activities include lending money, purchasing loans or interests in loans, and arranging for the servicing of loans. We note that if the activities themselves are not to be considered "transacting business," then the soliciting of such activities is also not "transacting business."

■ Given the clear intent of the Kentucky Legislature to eliminate the above-cited activities from the determination of "transacting business," we find that only the guaranteeing of the signature by California First Bank may be considered under the general long-arm statute of Ky.Rev. Stat. § 454.210(2)(a).

Standing alone, the guaranty of a signature in California is clearly insufficient to satisfy the minimum contacts test of due process. In a similar case, the Seventh Circuit held that an Iowa bank that cashed six checks whose endorsements were allegedly forged must be dismissed for lack of personal jurisdiction in a suit brought in Illinois by the Chicago bank upon which the checks had been drawn. *Froning & Deppe, Inc. v. Continental Illinois National Bank and Trust Co.*, 695 F.2d 289 (7th Cir.1982). We find *National Can Corp. v. K Beverage Co.*, 674 F.2d 1134 (6th Cir.1982), easily distinguishable because the parties in that case had greater contacts with Kentucky and, as the Sixth Circuit stated, "[s]igning a personal guaranty *for a Kentucky business in which one has an economic interest* is the sort of 'conduct and connection with the forum State' that makes it reasonable to 'anticipate being haled into court there' when the underlying contract is breached." *Id.* at 1138 (citations omitted) (emphasis added). Such a situation does not exist in this case.