**Rebecca JUDE, et al. Plaintiffs**

**v.**

**FIRST NATIONAL BANK OF WILLIAMSON Defendant**

**No. CIV.A.02–316–DLB.**

United States District Court,
E.D. Kentucky,
Pikeville.

March 31, 2003.

Stephen L. Hogg, Stratton, Hogg & Maddox, P.S.C., Pikeville, KY, for Plaintiffs.

Denise R. McClelland, Jerry M. Lovitt, Frost, Brown & Todd, LLC, Lexington, KY, for Defendant.

## OPINION & ORDER

BUNNING, District Judge.

This action is before the Court on Defendant's motion to dismiss. (Doc. # 3) Defendant contends that in personam jurisdiction before this Court is lacking, and therefore Plaintiffs' claims against it must be dismissed. Plaintiffs have filed their response, to which Defendant has replied, and the matter is ripe for adjudication.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Rebecca Jude (Jude) and Robert Layne (Layne) currently reside in Pike County, Kentucky. In October of 1999, while living in West Virginia, Jude and Layne purchased real estate in Pike County on which they intended to construct a residence. To finance the purchase and construction, Jude and Layne obtained financing from Defendant First National Bank of Williamson (First National). First National agreed to loan Jude and Layne the sum of $170,000, which loan was secured by a promissory note and mortgage on the real estate. In addition, First National required Plaintiffs to pledge a $50,000 certificate of deposit.

After Plaintiffs began construction of their home, Layne was seriously injured, from which he was rendered paralyzed. According to Plaintiffs, Defendant shortly thereafter refused to issue all agreed upon funds and instead demanded payment in full on the promissory note for the loan funds that had been disbursed. Plaintiffs allege that as a result of Defendant's conduct, they were unable to make payment to the vendors and contractors who performed construction services.

Plaintiffs filed suit against First National in the state circuit court in Pike County, Kentucky. Their complaint asserts First National breached the contractual agreement for financing; violated the provisions of the federal Truth in Lending Act and Regulation Z as well as the Equal Credit Opportunity Act and Regulation B; and discriminated against Plaintiffs because of Layne's disability, in violation of the Kentucky Civil Rights Act and the federal Fair Housing Act. After being served with the complaint, First National removed the action to this Court. In its notice of removal, Defendant asserts this Court has subject matter jurisdiction over Plaintiffs' state law claims based upon diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332, and also over Plaintiffs' federal claims based upon federal question jurisdiction pursuant to 28 U.S.C. § 1331.

Shortly after the case was removed, First National moved to dismiss this entire action for lack of personal jurisdiction pursuant to Federal Rule 12(b)(2). Defendant argues that Plaintiffs cannot rely upon the Kentucky long-arm statute, K.R.S. § 454.210, to establish in personam jurisdiction over it. Specifically, Defendant points out that while the long-arm statute permits exercise of personal jurisdiction for claims arising from a party's transact-

ing any business in Kentucky or having an interest in real property, the Kentucky legislature has also expressly provided that a foreign corporation's activities in lending money are not to be considered as transacting business, for purposes of the long-arm statute. K.R.S. § 287.670. Defendant asserts it engages in activities in Kentucky that are associated with the lending of money pursuant to a loan agreement with a borrower that may reside in Kentucky. It claims the activities associated with loans to Kentucky residents are completed from its facilities and operations located in West Virginia. First National advertises its banking business on a web site reaching Kentucky residents which states in part, *"The First National Bank of Williamson's* Board of Directors, Management and Employees are dedicated to serving people in our area. Now we want our bank to be your bank." First National receives all principal and interest payments on its loans at its Williamson, West Virginia, facilities and decisions and records concerning loan modifications, extensions, or renewals are made at the Bank's facilities in Williamson, West Virginia.

Plaintiffs oppose the motion to dismiss. They contend that Kentucky's long-arm statute permits the exercise of personal jurisdiction to the fullest extent permitted by the due process clause. They argue that their claims are not based on Defendant's loan of monies to them, but upon Defendant's breach of the agreement to release agreed-upon funds. Plaintiffs' response also points out that they have asserted a discrimination claim under the Kentucky Civil Rights Act, and that Defendant should be subject to personal jurisdiction thereunder since one of the purposes of that Act is to safeguard Kentucky residents from discrimination. Plaintiffs also argue that their Fair Housing Act discrimination claim permits suit in any appropriate state or federal court, and since the dwelling giving rise to the al-leged violation of the Fair Housing Act is in Kentucky, this Court is an appropriate court.

In reply, First National submits that Plaintiffs' labeling their claim as one for breach of contract rather than being based on the lending of money Is a distinction without a difference. In response to Plaintiffs' argument that the Fair Housing Act permits suit in any appropriate state or federal court, First National notes that this statutory provision does not negate the need for personal jurisdiction before Plaintiffs may maintain a state or federal discrimination suit against it.

## ANALYSIS

### *Standard of review*.

■ Once a defendant challenges personal jurisdiction, plaintiff bears the burden of establishing that jurisdiction exists. In assessing whether that burden has been satisfied, a district court has three procedural alternatives: "[it] may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion, or it may conduct an evidentiary hearing on the merits of the motion." *Dean v. Motel 6 Operating L.P.,* 134 F.3d 1269, 1272 (6th Cir.1998) (quoting *Serras v. First Tennessee Bank Nat'l Ass'n,* 875 F.2d 1212, 1214 (6th Cir.1989)). If an evidentiary hearing on the motion is not held,

> ... the court must consider the pleadings and affidavits in a light most favorable to the plaintiff.... To defeat such a motion, [the plaintiff] need only make a prima facie showing of jurisdiction.

> Furthermore, a court ... does not weigh the controverting assertions of the party seeking dismissal....

*Id.* (quoting *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1262 (6th Cir.1996)).

### Personal jurisdiction over Plaintiffs' state law breach of contract claim

Keeping this standard in mind, the Court turns to the challenge to personal jurisdiction raised by First National. Plaintiffs seek to obtain personal jurisdiction over First National based upon its "transacting business" within the Commonwealth of Kentucky. Ordinarily "transacting business" within Kentucky may serve as a basis to assert personal jurisdiction pursuant to subsection (2)(a)(1) of the Kentucky long-arm statute, K.R.S. § 454.210. First National argues it has not "transacted business" under § 454.210 due to the statutory exemption provided by K.R.S. § 287.670. That statute provides that certain lending activities by banks outside of the Commonwealth are not considered doing, transacting, or carrying on business in Kentucky.

> ... any foreign lending institution ... shall not be considered to be doing, transacting, or carrying on business in this state solely by reason of engaging in any or all of the following activities ...:
>
> (1) The lending of money ..., secured in whole or in part by mortgages, deeds of trust or other forms of security on real or personal property in this state, if such activities are carried on from outside this state by the lending institution ....

K.R.S. § 287.670(1).

The purpose for and interpretation of this statutory provision is unclear. There is no reported Kentucky case either applying or interpreting this statute. There is one federal district court opinion applying the statute, *Bank of Louisville v. California First Bank*, 641 F.Supp. 59 (W.D.Ky. 1986). In that case, once the court eliminated from its consideration of "transact-ing business" the banking activities of the California bank that fell within K.R.S. § 287.670, the only remaining activity that could be considered in determining whether personal jurisdiction existed was the bank's guaranteeing of a signature on a stock certificate. The federal district court concluded this activity alone was insufficient to satisfy the minimum contacts test of due process and, therefore, granted the California bank's motion to dismiss. *Id.* at 60.

This Court has some doubt as to whether, in enacting these exceptions to what is considered "doing, transacting, or carrying on business," the Kentucky legislature likewise intended these same activities should also not be considered as "transacting business" for purposes of asserting jurisdiction under Kentucky's long-arm statute. For example, in *Great Atlantic & Pacific Tea Co., Inc. v. Hill–Dodge Banking Co.*, 255 Iowa 272, 122 N.W.2d 337, 340 (1963) the Iowa Supreme Court examined similar exceptions. That court noted that the state legislature likely enacted these exceptions only for the intended purpose of determining whether foreign corporations need obtain a certificate of authority, not whether the foreign corporation was amenable to personal jurisdiction; however, the state legislature had not adequately clarified the scope of the statute and therefore the denial of personal jurisdiction on this ground was upheld by the court.[1] *Id.* at 340. The Iowa Supreme Court noted this lack of clarification by the state legislature resulted in a restriction upon the broadened concept of personal jurisdiction over foreign corporations expressed in *International Shoe Co. v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), which broadened concept of person-

---

1. The Iowa legislature has since repealed the involved statute and replaced it with a more specific one which clarifies that certain activities are not considered transacting business, but only for purposes of determining when a foreign corporation must obtain a certificate of authority. *See* Iowa Code § 490.1501.

al jurisdiction had been approved by the Iowa Supreme Court. *Id.*

Kentucky has similarly embraced the broadened concept of personal jurisdiction. Its long-arm has been interpreted by its courts to be as broad as the limits of due process. *Wright v. Sullivan Payne Co.,* 839 S.W.2d 250, 253 (Ky.1992); *Texas American Bank v. Sayers,* 674 S.W.2d 36, 38 (Ky.Ct.App.1984), *cert. denied,* 469 U.S. 1211, 105 S.Ct. 1180, 84 L.Ed.2d 328 (1985). Nevertheless, the intended scope of this statute is unclear. Therefore, absent some other indication from the state legislature or Kentucky courts on the scope of application of K.R.S. § 287.670, this Court is bound to apply the statute as posed by First National. In so doing, it is undisputed that the lending agreement between Plaintiffs and First National was negotiated and executed in the state of West Virginia. Plaintiffs were loaned funds for real estate in Kentucky, which loan was secured by a mortgage lien on the Kentucky property. Plaintiffs' payments on this loan were sent to First National in West Virginia. All of these activities would appear to fall within the category of activity described in K.R.S. § 287.670(1).

■ To refute this conclusion, Plaintiffs argue that their claim is centered around a breach of contract, not the lending of money, and therefore K.R.S. § 287.670(1) does not apply. The Court agrees with Defendant's position that this is a distinction without a difference when it comes to application of the statute. Part and parcel of a financial institution's lending of money is that written contracts will be involved. If the Bank's lending of money pursuant to agreement and secured by a mortgage on real property in Kentucky is not considered "transacting business," it is axiomatic that the Bank's alleged breach of that agreement by its subsequent refusal to lend money falls within the same category of activity.

### *Personal Jurisdiction over Plaintiffs' state and federal discrimination claims*

This conclusion does not, however, end the Court's analysis of whether this Court may exercise personal jurisdiction over First National. Plaintiffs point out they have also sued First National for discrimination in violation of K.R.S. Chapter 344 and the federal Fair Housing Act. Plaintiffs argue that Defendant should be subject to personal jurisdiction for violation of the Civil Rights Act because one of the purposes of the Act is to safeguard Kentucky residents from discrimination. Plaintiffs also argue that their Fair Housing Act claim permits suit in any appropriate state or federal court, with Kentucky appropriate because the property and dwelling are in this state. First National correctly points out that these points by Plaintiffs do not satisfy requirements of personal jurisdiction. However, First National states nothing more in terms of addressing the merits of whether First National is subject to personal jurisdiction on the discrimination claims. According to the complaint, Plaintiffs allege First National caused tortious injury when, after Plaintiffs had relocated to Kentucky, First National discriminatorily decided to withhold loan funds from them because Layne became disabled. Under the appropriate standard for review of Defendant's motion to dismiss, these allegations are viewed in the light most favorable to Plaintiffs and thereby accepted by the Court as credible for purposes of the pending motion.

■ The criteria set forth in Kentucky's long-arm statute are stated in the alternative, not the conjunctive. *Clay v. Hopperton Nursery, Inc.,* 533 F.Supp. 476, 479 (E.D.Ky.1982). That being said, unlike the Plaintiffs' claim for breach of contract,

Plaintiffs' claim for violation of the Kentucky Civil Rights Act is one sounding in tort. The long-arm statute allows for the exercise of personal jurisdiction as to a claim arising from tortious injury being caused by an act or omission by Defendant. K.R.S. § 454.210(2)(a)(3) & (4). Therefore, unlike the Plaintiffs' breach of contract claim, their claim for state civil rights violation turns upon application of a different provision of the long-arm statute for purposes of determining whether personal jurisdiction may be exercised over this claim.

■■ As for whether personal jurisdiction may be exercised over First National for purposes of Plaintiffs' Federal Housing Act claim, consideration is first directed to the basis on which defendant is amenable to service of process for this claim. Some federal statutes include express provisions for nationwide service of process. *See, e.g., Medical Mutual of Ohio v. deSoto*, 245 F.3d 561 (6th Cir.2001) (applying nationwide service clause of ERISA). When a federal statute provides for nationwide service of process, it becomes a statutory basis for personal jurisdiction. *Haile v. Henderson National Bank*, 657 F.2d 816, 824 (6th Cir.1981), *cert. denied by First National Bank of Alabama–Huntsville v. Haile*, 455 U.S. 949, 102 S.Ct. 1450, 71 L.Ed.2d 663 (1982). Here, the Court's examination of the Fair Housing Act fails to reveal any nationwide service of process provision. *See Spann v. Colonial Village, Inc.*, 124 F.R.D. 1, 2 (D.D.C.1988), *rev'd on other grounds*, 899 F.2d 24 (D.C.Cir.1990)

("there is no federal statute or rule generally authorizing extraterritorial service in actions under … the Fair Housing Act"). If the federal statute has no such express provision, federal trial courts are directed to look to the service of process provisions of Rule 4 of the Federal Rules of Civil Procedure, which authorize service consistent with that allowed by the law of the state in which the court sits.[2] Rule 4(k)(1)(A) provides:

> (1) Service of a summons or filing a waiver of service is effective to establish jurisdiction over the person of a defendant
>
> (A) who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located[.]

Thus, obtaining personal service for both Plaintiffs' K.R.S. Chapter 344 claim and the Federal Housing Act claim are first analyzed by looking to Kentucky's long-arm statute, K.R.S. § 454.210.

■ Exercising personal jurisdiction based upon causing tortious injury in Kentucky is addressed in two subsections of § 454.210(2)(a). Subsection (2)(a)(3) applies to those situations where tortious injury occurs in Kentucky by an act or omission also in Kentucky. Subsection (2)(a)(4) applies to those situations where tortious injury occurs in Kentucky by an act or omission outside of Kentucky. The case record thus far fails to identify the specific manner in which the alleged discrimination was consummated; that is, whether it was

---

**2.** In 1987 in *Omni Capital Int'l v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987) the Supreme Court found there was no court created nationwide service of process provision, nor did the federal statute sued upon provide for nationwide service. 484 U.S. at 107–08, 108 S.Ct. 404. Therefore, the plaintiff was limited to the state long arm to complete service over a foreign defendant, which provided insufficient con-

tacts. *Id.* at 108, 108 S.Ct. 404. In 1993 Federal Rule 4 was amended and then sections (e) and (f) were in large part replaced by 4(k). Specifically 4(k)(2) now allows for nationwide federal service of process over alien defendants for claims arising under federal law. But where defendant is a non-resident of the forum but within the United States, Rule 4(k) still provides that federal courts look to state rules for service of process.

by some verbal or written communication to Plaintiffs in Kentucky by which they were notified that no further funding would be forthcoming. But even construing this factual query in a light most favorable to Plaintiffs, the Court concludes subsection (2)(a)(4), causing tortious injury in Kentucky by acts or omissions outside Kentucky, is the appropriate subsection to apply. In *Pierce v. Serafin, M.D.*, 787 S.W.2d 705 (Ky.Ct.App.1990), plaintiff filed an action for invasion of privacy against an out-of-state physician who mailed an allegedly tortious letter to plaintiff's treating Kentucky physician against whom plaintiff was considering bringing a malpractice suit. Plaintiff sought to assert personal jurisdiction pursuant to subsection (2)(a)(3), arguing that the tort was completed when the letter, which constituted the "act," was received in Kentucky. *Id.* at 705. The court disagreed, concluding that by simply mailing the letter the physician had not acted in the Commonwealth. *Id.* at 706. To conclude it was sufficient, the court said, would essentially obviate the need for subsection (2)(a)(4). *Id.*

Applying, therefore, K.R.S. § 454.210(2)(a)(4) to this case based upon the rationale of *Pierce v. Serafin, M.D.* requires this Court to conduct a further inquiry. This statutory section provides for exercise of personal jurisdiction over a person as to a claim arising from the person's causing tortious injury in Kentucky by an act outside of Kentucky, but only if the person

> regularly does or solicits business, or engages in any other persistent course

of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth[.]

The record is lacking in sufficient information to permit the Court to reach a conclusion as to whether First National "regularly does ... business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered" in Kentucky. There is no information in the record suggesting First National engages "in any other persistent course of conduct" in Kentucky aside from engaging in banking related business activities with Kentucky residents. Nor is it possible from the record to measure or gauge whether First National regularly does business in Kentucky, particularly if "doing business" does not include those activities set forth in K.R.S. § 287.670. The record also contains no information as to what revenues First National derives from services it renders to Kentucky residents.

There is, nevertheless, sufficient information to conclude Plaintiffs have made a prima facie showing that the requirements of K.R.S. § 454.210(2)(a)(4) are satisfied. This is because the subsection also speaks of the regular solicitation of business in Kentucky.[3] Plaintiffs point out that First National regularly solicits business by way

---

**3.** The Court recognizes that in *Bank of Louisville v. California First Bank*, 641 F.Supp. 59 (W.D.Ky.1986) that court reasoned that if certain banking activities are excluded under K.R.S. § 287.670 from consideration as "transacting business," then soliciting such activities would likewise not be viewed as "transacting business." *Id.* at 60. But given this Court's questioning of the intended scope

of applying this statute to the assessment of whether personal jurisdiction exists, as well as Kentucky's expressed commitment to a broadened concept of personal jurisdiction, this Court is not willing to extend § 287.670 beyond the activities specifically identified in the statute, which list does not include solicitation.

of a web site. The Court is aware of those decisions wherein web advertising was held insufficient contact with the forum. *E.g., Auto Channel, Inc. v. Speedvision Network LLC,* 995 F.Supp. 761, 765 (W.D.Ky.1997) ("the fact that Internet users in Kentucky can view advertisements on web pages ... falls far short of demonstrating that Defendants advertise in Kentucky"). In this case, however, even assuming this web page is First National's only medium for the solicitation of business from Kentucky residents since it is the only medium referenced thus far in the record, the Court finds the targeted nature of the web site relevant to the statutory requirement. Defendant's home page reflects a mission statement focused on conveying to area residents that First National is a small, local bank there to serve the people in the immediate area, and encourages local area residents to make further inquiry. The web page states "Your Hometown Bank is Making a Difference." The page does not say that First National is there to serve the people of Williamson or the West Virginia county in which it is located. First National is located near the border of Kentucky and West Virginia, immediately adjacent to Pike County, Kentucky. The web page further reflects that questions or comments can be directed to the Bank's email, "fnbwmson@eastky.net" (emphasis added). Given that the Court finds this activity to be sufficient regular solicitation of business, and Plaintiffs' state and federal claim for tortious injury for discriminatory lending practices arises from and is related to First National's solicitation of such banking business, the requirements of this provision of the long-arm statute have been satisfied.

 Although Kentucky's long-arm statute authorizes the exercise of personal jurisdiction over First National on Plaintiffs' state and federal discrimination claims, this exercise of jurisdiction must still be consistent with constitutional due process.[4] "The constitutional touchstone of the determination whether an exercise of personal jurisdiction comports with due process 'remains whether the defendant purposefully established minimum contacts in the forum state.'" *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *International Shoe Co. v. Washington,* 326 U.S. at 316 (1945)). The Supreme Court has expressed this personal jurisdiction test as follows:

> Due process requirements are satisfied when in personam jurisdiction is asserted over a nonresident corporate defendant that has 'certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'

*Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) (quoting *International Shoe Co.,* 326 U.S. at 316, 66 S.Ct. 154). The Sixth Circuit has established a three-part inquiry to implement the Supreme Court's requirements for personal jurisdiction:

4. For Plaintiffs' state claim, constitutional due process requires the exercise of personal jurisdiction also satisfy the Fourteenth Amendment due process clause. Fourteenth Amendment standards still apply in those federal question cases involving a non-foreign defendant where nationwide service is not provided by statute and the federal court instead must utilize the state long arm. *Id.* at 612, 616.

*See also Graphic Controls Corp. v. Utah Medical Prods., Inc.,* 149 F.3d 1382 (C.A.Fed.1998) (federal courts use state statute in determining whether personal jurisdiction exists, even in federal question cases). If the exercise of jurisdiction is permitted by the Fourteenth Amendment, it would necessarily be permitted by the Fifth Amendment Due Process Clause as well.

... First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 381 (6th Cir.1968); *see also Wilson v. Case,* 85 S.W.3d 589, 593 (Ky.2002) (approving *Southern Machine* three-part test, first adopted in Kentucky by its court of appeals in *Tube Turns Division of Chemetron Corp. v. Patterson Co., Inc.,* 562 S.W.2d 99, 100 (Ky.Ct.App. 1978)).

Here, First National has availed itself of the privilege of acting in Kentucky through its targeted business solicitation of area Kentucky residents to form banking and other financial relationships with them. *See Clay v. Hopperton Nursery, Inc.,* 533 F.Supp. 476 (E.D.Ky.1982) (finding K.R.S. § 454.210(2)(a)(4) satisfied by regular solicitation for customers in trade journal). In addition, at the time the real estate financing transaction was entered into between it and Plaintiffs, First National was aware the monies were to be used for property in Kentucky and secured its interest with a mortgage lien on this Kentucky property and Plaintiffs' relocation to Kentucky. Since we assume for purposes of the pending motion that Plaintiffs were subsequently treated in a discriminatory manner, without adjudicating that they were in fact discriminated against, such conduct caused a consequence within Kentucky. It is reasonable to expect to be haled into Kentucky to answer for discriminatory conduct directed at Kentucky residents. Moreover, and as discussed above when analyzing the long-arm statute, First National's activities in soliciting residential mortgage business gave rise to Plaintiffs' state and federal claims for discrimination.

The final inquiry under the three-part test is whether First National's contacts have a substantial enough connection with Kentucky to make the exercise of personal jurisdiction over it fundamentally fair. Where there is a finding of purposeful availment and a finding that the cause of action arose from the defendant's contacts with the forum state, then an inference arises that the third factor is also met. *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1263 (6th Cir.1996). In light of the foregoing, the Court finds that it has personal jurisdiction over First National for purposes of Plaintiffs' discrimination claims.

### *Exercising personal jurisdiction over Defendant for the remaining claims*

Since the Court concludes that it has personal jurisdiction over Plaintiffs' state and federal law discrimination claims, this raises the question to what extent this Court may exercise personal jurisdiction over Defendant for Plaintiffs' remaining claims, including the state breach of contract claim where personal jurisdiction is lacking under the statutory "transacting business" exceptions of K.R.S. § 287.670. The Court has been unable to locate decisions of Kentucky courts expressly addressing the issue of whether personal jurisdiction may be exercised by its trial courts over an entire cause of action involving multiple claims, where personal jurisdiction over some of those claims is lacking. It is not, however, necessary for this Court to speculate as to how Kentucky would resolve this question in light of the fact that Plaintiffs have also asserted federal claims. One of the bases for Defendant's removal of this action was this Court's exercise of federal question juris-

diction under 28 U.S.C. § 1331, which serves as an independent basis for subject matter jurisdiction in federal district courts.

As already concluded above, valid personal jurisdiction exists over Plaintiffs' Fair Housing Act claim. The question therefore becomes, if this federal court has valid personal jurisdiction over at least one federal question claim before it, may personal jurisdiction thereby be exercised over all other claims before it? In the federal arena, consideration by courts faced with this question has given rise to a doctrine commonly referred to as pendent personal jurisdiction. That is, where a federal court has valid personal jurisdiction over a defendant for one or more claims, but personal jurisdiction over other claims is lacking, may the court nevertheless require the defendant to respond to all claims on the basis of extending personal jurisdiction over those claims pendent to the action? *See* 4A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1069.7 (3d ed.2002) (discussing history and application of the doctrine). Though there is no reported decision from the Sixth Circuit discussing this doctrine, each of the federal circuit courts presented with the circumstance has applied pendent personal jurisdiction. *See* Linda Sandstrom Simard, *Exploring the Limits of Specific Personal Jurisdiction*, 62 Ohio St. L.J. 1619, 1625 & n. 25 (2001). There are differing viewpoints on the doctrine among the federal district courts, though the majority of federal trial courts have applied the doctrine. Simard, *supra*, at 1626 & n. 26. At least one federal district court within this judicial circuit has approved of and applied the doctrine. *Iron Workers Local Union No. 17 Insurance Fund v. Philip Morris Inc.*, 23 F.Supp.2d 796, 804–05 (N.D.Ohio 1998) (finding exercise of pendent personal jurisdiction over state law claims appropriate where personal jurisdiction existed under RICO's nationwide

service of process provision and state law claims derive from common nucleus of operative fact).

Most of the cases thus far that have had occasion to consider the doctrine involved circumstances where the federal statute sued upon authorized nationwide service of process. *See* discussion in Simard, *supra*, at 1632–36. Another circumstance where pendent personal jurisdiction might be considered is that where, as with the case herein, the federal statute sued upon does not provide for nationwide service of process, so application of state service of process rules is instead looked to pursuant to Federal Rule 4(k). *See* discussion in Simard, *supra*, at 1626–27 & n. 26. Although decisions from courts faced with this circumstance are few, at least some of these courts have found the rationale behind application of pendent personal jurisdiction equally compelling in cases where the federal statute requires application of state service of process rules. *See* Simard, *supra*, at 1630, 1636–40 (discussing *Anderson v. Century Prods. Co.*, 943 F.Supp. 137 (D.N.H.1996) wherein court had personal jurisdiction over tort claim and exercised pendent personal jurisdiction over contract claim arising from same facts but over which specific personal jurisdiction was lacking). In *Hargrave v. Oki Nursery, Inc.*, 646 F.2d 716 (2d Cir.1980), the Second Circuit found it was reasonable to exercise pendent personal jurisdiction for all claims by analogy to the authority of federal courts to exercise subject matter jurisdiction over entire controversies arising out of a common nucleus of operative fact. *Id.* at 719.

 The Court concludes that the exercise of pendent personal jurisdiction in this case is appropriate. *See* Simard, *supra*, at 1645–50, 1652–61 (concluding exercise in nonnationwide service of process situations is not restricted by the language

of Civil Rule 4(k)(1) or the federal civil rules generally; that federal jurisprudence favors discretion to adjudicate entire actions; and that finding due process is satisfied is reasonable given that implied consent to personal jurisdiction on compulsory counterclaims has been held not to offend due process rights). Each of the claims asserted by Jude and Layne arises from the same underlying transaction with First National. Judicial economy also suggests the more appropriate course is to process all related claims in one action. *See Salpoglou v. Widder,* 899 F.Supp. 835, 838 (D.Mass.1995) (finding that since court could exercise personal jurisdiction over defendant for breach of contract claim, requiring defendant to also litigate malpractice claim arising from same facts did not impose a significant burden on defendant and would further economy for the litigants and court). The Court concludes, therefore, that Plaintiffs have made a prima facie showing that First National is subject to personal jurisdiction in this Court for the discrimination claims, and that First National is subject to personal jurisdiction in this Court for all other claims based upon pendent personal jurisdiction.

Accordingly, **IT IS ORDERED** as follows:

(1) That Defendant's motion to dismiss (Doc. # 3) is hereby **DENIED;**

(2) That Defendant is hereby ordered to respond to Plaintiffs' complaint within **twenty (20) days** from the date of this Order; and,

(3) That the parties shall thereafter move forward with their Rule 26 conference and file a report of planning meeting **on or before May 10, 2003.**