Samantha KENNEDY

v.

Karl ZIESMANN, M.D., et al.

Civ. A. No. 80–159.

United States District Court,
E. D. Kentucky,
Covington Division.

Dec. 8, 1981.

Bill G. Wilder and Jan Paul Koch, Florence, Ky., for plaintiff.

Leo J. Breslin, Lindhorst & Dreidame, David A. Kohnen, Walter E. Haggerty, Frost & Jacobs, Cincinnati, Ohio, for defendants.

MEMORANDUM OPINION and ORDER

BERTELSMAN, District Judge.

This opinion will deal with further issues in this medical malpractice case, another

aspect of which has been reported at 520 F.Supp. 706 (E.D.Ky.1981). The complaint alleges that the defendants negligently caused or permitted anesthetic to be administered to the plaintiff while she was pregnant but did not know it, thus endangering both herself and the fetus. By reason of her fear of the ill effects of the anesthesia, she alleged she subsequently had an abortion.

The aspect before the court at this time concerns personal jurisdiction over the defendant Ziesmann.[1] Concerning the defendant Ziesmann, the facts are these:

The defendant, Karl Ziesmann, M.D., is a board certified obstetrician and gynecologist who resides and practices in Cincinnati, Ohio.[2] Dr. Ziesmann is licensed to practice medicine only in Ohio. His medical practice, Glenn-Ziesmann Associates, Inc., is incorporated in the State of Ohio. Dr. Ziesmann is a member of the administrative and teaching staff at Bethesda Hospital, a hospital located in Cincinnati, Ohio. He is also Chairman of the OB–GYN Department and Chairman of the Medical-Dental Staff which automatically makes him a Member of the Board of Trustees.

Including the procedure performed on plaintiff, Dr. Ziesmann has performed three joint surgeries on Kentucky residents with Doctors Cullen and Brogan in the past five years. Several years back he accepted a fourth Kentucky resident for treatment. Dr. Ziesmann is not on staff at any hospital in Kentucky. He maintains no banking or checking accounts in Kentucky, nor does he own any personal or real property in the State of Kentucky.

The plaintiff, Samantha Kennedy, was referred to the defendant for a tubal ligation by her Kentucky doctor, Dr. Brogan, a plastic surgeon. Dr. Brogan was to perform two other surgical procedures on Ms. Kennedy, an abdominal lipectomy and a bilateral augmentation mammoplasty. When Ms. Kennedy expressed a desire to obtain a tubal ligation, Dr. Brogan suggested that all procedures could be accomplished at once but it would necessitate his working in conjunction with a Cincinnati doctor since he did not perform tubal ligations. He informed the plaintiff that he had worked with Dr. Ziesmann before on this type of cooperative surgery.

Dr. Brogan telephoned Dr. Ziesmann to request that he see the plaintiff with regard to the surgery. Dr. Brogan provided the plaintiff with Dr. Ziesmann's office address and telephone number and instructed her to set up an appointment for an examination with Dr. Ziesmann. The plaintiff seemed to recall that Dr. Brogan arranged the appointment with Dr. Ziesmann but on further questioning she admitted her confusion and said that it was quite probable that she made the appointment.

The plaintiff went to Ohio around October 25 or 26, 1979, for her appointment with Dr. Ziesmann. Dr. Brogan, not Dr. Ziesmann, arranged for admission of the plaintiff into Bethesda Hospital. On December 7, 1979, Dr. Ziesmann performed a bilateral tubal ligation on the plaintiff in conjunction with two other surgical procedures performed by Dr. Brogan. Post-operative care was rendered by Dr. Ziesmann from mid-December 1979 to mid-January 1980.

On December 26, 1979, the plaintiff went to Dr. Brogan's office and demanded a pregnancy test. Positive results were obtained on December 27, 1979. The plaintiff called Dr. Ziesmann's office that same

[1]. The court has previously ruled that personal jurisdiction, under Kentucky's long-arm statute, is proper with regard to defendants Brogan, Cullen and Bethesda Hospital. Doctors Brogan and Cullen maintain an office in Kentucky in which plaintiff consulted them for the medical treatment giving rise to the claim asserted in this action. The court held that personal jurisdiction existed over Bethesda Hospital, located in Cincinnati, Ohio, on the basis of the affidavit of the plaintiff that Doctors Brogan and Cullen were acting as agents for Bethesda in admitting Kentucky residents to its facilities in Cincinnati. The ruling concerning Bethesda Hospital was made on condition that it would be reconsidered if the proof revealed otherwise.

[2]. The Northern Kentucky area, served by this court, is primarily a suburban community, adjacent to Cincinnati, Ohio.

day with the results. Dr. Ziesmann returned plaintiff's call and suggested that she seek help at the Margaret Sanger Clinic in Cincinnati, Ohio. Instead, plaintiff, on or about December 28, 1979, visited another doctor in Florence, Kentucky to seek medical advice as to whether she was capable of carrying the baby. This doctor referred her to Women to Women, a clinic in Cincinnati. Ultimately, the plaintiff obtained an abortion in Cincinnati on January 2, 1980.

On March 24, 1980, the plaintiff hemorrhaged and was treated at St. Elizabeth North Hospital in Kentucky in the emergency room. On March 27, 1980, the plaintiff called Dr. Ziesmann to obtain advice on the bleeding. Dr. Ziesmann telephoned Kentucky one hour later, returning the plaintiff's call. He then telephoned Ralph Schwartz Drugs in Florence, Kentucky, to prescribe methegrine tablets for treatment of the plaintiff's bleeding.

Subsequently, this original action was brought in this court seeking damages against the defendants based on alleged malpractice in permitting anesthetic to be administered to plaintiff while she was pregnant. Dr. Ziesmann was served through the Secretary of the State of Kentucky, pursuant to Kentucky's long-arm statute, KRS § 454.210.[3] Although the court is aware that this statute "has authorized...the courts to reach to the full constitutional limits in pursuing non-resident defendants,"[4] the court nevertheless holds that the statute does not contemplate an exercise of personal jurisdiction over the defendant Ziesmann in the circumstances above described, and that to exercise such personal jurisdiction over him in these circumstances would be a deprivation of his constitutional right to due process of law. Therefore, his motion to dismiss for lack of personal jurisdiction must be granted.

■ Although the long-arm statute is to be interpreted broadly, its reach is not unlimited. It has been stated that there are three prerequisites for a proper exercise of personal jurisdiction over a non-resident under the long-arm statute:

"...First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in that state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable."[5]

Analysis reveals that these elements are lacking here. Considering the first two elements together, plaintiff argued that Dr. Ziesmann in treating a resident of Kentucky "purposefully" caused "a consequence" in Kentucky, since he knew plaintiff would return there bearing any ill effects his treatment may have caused her.

---

**3.** This statute reads in pertinent part:
"A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:
1. Transacting any business in this Commonwealth;
2. Contracting to supply services or goods in this Commonwealth;
3. Causing tortious injury by an act or omission in this Commonwealth;
4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth;

\* \* \* \* \* \*

When jurisdiction over a person is based solely upon this section, only a claim arising from acts enumerated in this section may be asserted against him."

**4.** *Poyner v. Erma Werke, G.M.B.H.,* 618 F.2d 1186, 1188 (6th Cir. 1980); *Davis H. Elliott Company, Inc. v. Caribbean Utilities Co., Ltd.,* 513 F.2d 1176 (6th Cir. 1975); *see* discussion in 6 Clay, *Kentucky Practice,* Rule 4.04(9), Comment 2 (Supp.).

**5.** *Thermothrift Industries, Inc. v. Mono-therm Insulations Systems, Inc.,* 450 F.Supp. 398 (W.D.Ky.1978), (reviews the history of the development of the law in this area).

But the cause of action against Dr. Ziesmann did not arise from activities in Kentucky merely because he treated a Kentucky resident in Ohio who then returned to Kentucky.

█ In a closely analogous situation, Judge Ballantine of the Western District of Kentucky held that an Ohio dentist was not subject to service of process under the long-arm statute under similar circumstances.[6] "Medical services provide a unique situation in determining whether personal jurisdiction exists."[7] This court concurs with the view that "the idea that tortious rendition of such services is a portable tort which can be deemed to have been committed wherever the consequences foreseeably were felt is wholly inconsistent with the public interest in having such services generally available."[8]

█ Plaintiff argues that the listing in directories circulated in Kentucky and the telephone calls Dr. Ziesmann made to Kentucky satisfy the "purposefully availing" element of the tripartite test discussed above.

In support of this contention, plaintiff relies on *McGee v. Riekhof*,[9] but that case is clearly distinguishable. There, the cause of action alleged was based on claimed negligent advice given by the non-resident defendant physician in telephoning plaintiff in the forum state and advising him to return to work, allegedly prematurely, after a delicate eye operation. The court was careful to point out that the cause of action arose out of alleged negligent advice given to the plaintiff in the forum state by the non-resident defendant from outside the forum state. Here, the cause of action alleged, if any exists, arose in Ohio when the anesthetic was administered, and the telephone calls were only incidental. Incidental telephone calls from outside the forum state into the forum state are insufficient contacts to be the basis of an exercise of personal jurisdiction.[10]

Nor may the mere carrying of a telephone listing, without additional advertising or other solicitation, amount in and of itself to regular solicitation of business such as to make a physician situated as is the defendant subject to suit under the long-arm statute of a neighboring state where the directory is distributed. In a well-reasoned opinion also involving medical services rendered in Cincinnati to a resident of a suburban area in another state, Judge Noland of the Southern District of Indiana specifically rejected the argument that the fact that the adjoining areas of the two states were one economic area with a common telephone directory was a sufficient basis for the exercise of personal jurisdiction over a Cincinnati physician for alleged negligent treatment given to a resident of Southeast Indiana.[11]

We turn now to the third element of the test, fairness. Although, as has been stated, the Kentucky long-arm statute is to be broadly interpreted, the court must be careful to use it to promote fairness and not as an instrument of oppression or abuse. Employing it against Dr. Ziesmann in this case would, the court fears, not only be unfair to him but operate to the detriment of the citizens of Kentucky, rather than affording them a fair forum to make claims against those who have purposefully conducted business in or derived substantial revenue from Kentucky, as was the intent of the legislature in enacting the statute. If the Kentucky courts were to exercise personal

**6.** *Jackson v. Wileman*, 468 F.Supp. 822 (W.D. Ky.1979).

**7.** *Russell v. Bennett*, (S.D.Ind. No. IP 81–352–C) (unpublished).

**8.** *Wright v. Yackley*, 459 F.2d 287 (9th Cir. 1972). *Cf. Kulko v. Superior Court of California, etc.*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978).

**9.** 442 F.Supp. 1276 (D.Mont.1978).

**10.** *Id.* at 1278; *Tube Turns Division of Chemetron Corp. v. Patterson Company, Inc.*, 562 S.W.2d 99 (Ky.App.1978); *Lakeside Bridge & Steel Company v. Mountain State Construction*, 597 F.2d 596 (7th Cir. 1979).

**11.** *Russell v. Bennett*, (S.D.Ind. No. IP 81–352–C) (unpublished).

jurisdiction over every doctor of a metropolitan area in another state who permitted his name to be included in Kentucky telephone directories, or who accepted patients from Kentucky, the result might well be that Kentucky residents would be denied sorely needed medical treatment, especially in the more specialized fields, in Cincinnati or other metropolitan areas.

In summary, this court holds that it would be unconstitutionally unfair to subject Dr. Ziesmann to the personal jurisdiction of Kentucky courts under the circumstances reflected in this record. Although he might have foreseen that his treatment of plaintiff might have some indirect effects in Kentucky, more than that is required. The foreseeability that is critical to due process analysis is "that he should reasonably anticipate being haled into court there." [12]

This degree of foreseeability is lacking here.

Fairness and due process require that physicians in the position of Dr. Ziesmann be able to "structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." [13] Except for incidentals mentioned above, Dr. Ziesmann has limited his professional treatment of this plaintiff, and, for all the record shows, his other professional activities to Ohio. There will be no benefit to the citizens of Kentucky in subjecting to the jurisdiction of its courts a non-resident physician whose contacts are as insubstantial with the forum state as are those of Dr. Ziesmann. There are insufficient minimum contacts [14] to serve as a basis of personal jurisdiction over him in this case.

Therefore, Dr. Ziesmann's motion to dismiss for lack of personal jurisdiction must be granted.

IT IS SO ORDERED.

---

12. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

13. *Id.*

14. *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).