AUTO CHANNEL, INC., et al.,   Plaintiffs

v.

SPEEDVISION NETWORK,
LLC, et al., Defendants.

Civil Action No. 3:97–CV–38–H.

United States District Court,
W.D. Kentucky,
Louisville Division.

Nov. 19, 1997.

James E. Morreau, Jr., Kruger, Schwartz & Morreau, Louisville, KY, for Auto Channel, Inc.

K. Gregory Haynes, Wyatt, Tarrant & Combs, Louisville, KY, Burt A. Braveman,

Sandra Greiner, T. Scott Thompson, Cole, Rayvid & Braveman, Washington, DC, for Speedvision Network.

Janet P. Jakubowicz, John K. Bush, Greenebaum Doll & McDonald, Louisville, KY, Timothy J. O'Rourke, Scott D. Dailard, Dow, Lohnes & Alberson, Washington, DC, for Cox Communications.

James R. Cox, Reed, Weitkamp, Schell, Cox & Vice, Louisville, KY, M. Norman Goldberger, Dana B. Klinges, Robert Goldstein, Wolf, Block, Schorr & Solis–Cohen, Philadelphia, PA, for Comcast Corporation.

Richard A. Vance, Robert W. Griffith, Bethany A. Breetz, Stites & Harbison, Louisville, KY, Andrew D. Crain, U.S. West, Inc., Denver, CO, for Continental Cablevision.

## MEMORANDUM OPINION

HEYBURN, District Judge.

In a separate Memorandum Opinion the Court has discussed numerous dispositive motions. As a result, Plaintiffs have the following causes of action remaining: (1) unfair competition and misappropriation of trade secrets against Cox, Comcast, Continental and Speedvision and (2) various contractual, bad faith, fraud and fiduciary duty common law actions against Cox.

The Court now considers motions of Defendant Speedvision Network, LLC ("Speedvision") and Defendant Continental Cablevision, Inc. ("Continental") to dismiss Plaintiffs' remaining claims against each of them for lack of personal jurisdiction and improper venue. Plaintiff Auto Channel, Inc. is a Kentucky corporation with its principal place of business in Louisville, Kentucky. Plaintiff Robert J. Gordon d/b/a Gordon Communications is a resident of Louisville, Kentucky. Plaintiff Marco J. Rauch is a resident of Rancho Cordova, California. Defendant Speedvision is a Delaware limited liability company with its principal place of business in Stamford, Connecticut. Defendant Continental is a Delaware corporation with its principal place of business in Boston, Massachusetts. Neither Speedvision nor Continental has any offices, employees, or agents in Kentucky. Neither has entered into any contracts or advertised (other than via an Internet web page) in Kentucky.

## I

Since all antitrust claims against Speedvision and Continental have been dismissed, this Court no longer has personal jurisdiction over the parties pursuant to the nationwide service of process provision set forth in 15 U.S.C. § 22. Accordingly, Plaintiffs must now rely on the Kentucky long-arm statute to establish personal jurisdiction over the parties. *See, e.g., Morley v. Cohen,* 610 F.Supp. 798, 823 (D.Md.1985) ("[P]laintiffs must plead … sufficient facts to establish a basis for personal jurisdiction independent of the nationwide service of process provisions of the previously dismissed federal claims.") For the purposes of this motion, Plaintiffs have the burden of establishing a *prima facie* case of personal jurisdiction under the applicable long-arm statute. *See Welsh v. Gibbs,* 631 F.2d 436, 438–439 (6th Cir.1980). The Court will consider the pleadings and affidavits in the light most favorable to the Plaintiffs. *Id.* at 439.

In order to determine whether personal jurisdiction exists over a nonresident defendant in a diversity action, this Court must apply the law of the state in which it sits, subject to due process limitations. *Id.* Kentucky's long-arm statute provides that:

> A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:
>
> 1. Transacting any business in this Commonwealth;
>
> 2. Contracting to supply services or goods in this Commonwealth;
>
> 3. Causing tortious injury by an act or omission in this Commonwealth;
>
> 4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of sub-

stantial revenue within the Commonwealth.

\* \* \* \* \* \*

K.R.S. 454.210(2)(a).

Kentucky courts may employ the long-arm statute to exercise jurisdiction over nonresidents "only to the limits of the Constitution's due process clause." *Wright v. Sullivan Payne Company*, 839 S.W.2d 250, 253 (Ky. 1992). Therefore, under the long-arm statute, a plaintiff must demonstrate that the defendant has the statutorily required contacts with Kentucky and that the cause of action arose from those contacts. *See* K.R.S. 454.210(2)(a).

Plaintiffs have properly pleaded claims against Speedvision and Continental for misappropriation of trade secrets [1] and common law unfair competition. These claims sound in tort. Moreover, there appears to be no dispute that the alleged tortious acts from which these claims arose occurred outside of Kentucky. Therefore, the applicable section of the Kentucky long-arm statute is K.R.S. 454.210(2)(a)4, which permits personal jurisdiction over nonresident tortfeasors who cause tortious injury in the state through acts done outside the state.[2] This subsection requires an "out-of-state" tortfeasor to have at least one of several enumerated contacts with Kentucky before he or she is subject to a court's jurisdiction. Specifically, the tortious injury must "arise[] out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue" in Kentucky. K.R.S. 454.210(2)(a)4.

▮ The oral and written submissions of both parties suggest that the Court should essentially bypass the specific requirements of the long-arm statute and proceed directly to a due process analysis of the Defendants' contacts with the forum. They base this position on language in 6nd Kentucky case law stating that the long-arm statute "allows Kentucky courts to reach to the full constitutional limits of due process in entertaining jurisdiction over non-resident defendants." *Mohler v. Dorado Wings, Inc.*, 675 S.W.2d 404, 405 (Ky.Ct.App.1984); *Poyner v. Erma Werke GmbH*, 618 F.2d 1186, 1192 (6th Cir.1980). Most of us have heard words to this effect repeated so often that we long ago stopped reflecting upon what might be their true meaning or origin. However, a closer reading of these precedents produces a subtle conclusion. Underlying the holdings in these cases is the notion that "the purpose of the Kentucky long-arm statute is to insure that Kentucky courts comply with federal constitutional requirements of due process before asserting personal jurisdiction over nonresident defendants." *Pierce v. Serafin, M.D.*, 787 S.W.2d 705, 706 (Ky.Ct.App.1990); *Texas American Bank v. Sayers*, 674 S.W.2d 36, 38 (Ky.Ct.App.1984). The notion is not that we ignore the precise language which the legislature has chosen to ensure that constitutional compliance.

The legislative intent to comply with due process is manifest in the specific provisions of K.R.S. 454.210, which were carefully drafted to ensure that jurisdiction over nonresident defendants in a variety of contexts is predicated on the requisite minimum contacts. For example, "Kentucky has elected to assume personal jurisdiction over a nonresident tort-feasor whose activities outside the state result in injury only if that tort-

---

1. K.R.S. § 365.880 *et seq.* (Uniform Trade Secrets Act)

2. Plaintiffs have suggested that KRS 454.210(2)(a)1.–2 may establish personal jurisdiction over Defendants. Their reasoning apparently is that operating or deriving revenue through independent distributors can establish minimum contacts with the forum. *See Payne v. Kristofferson*, 631 F.Supp. 39, 43 (N.D.Ga.1985) (nonresident's licensing arrangement with national distributor of allegedly infringing song books sufficient to establish minimum contacts with forum); *See also Edy Clover Productions, Inc. v. National Broadcasting Co.*, 572 F.2d 119, 120–21 (3rd Cir.1978) (nonresident programmer could anticipate that allegedly infringing game show might be broadcast by distributor in forum). However, even if such arrangements constituted "transacting any business" or "contracting to supply goods or services" in Kentucky under the long-arm statute, Plaintiffs tort claims still would not "arise from" these contacts. *See Thermothrift Industries, Inc. v. Mono–Therm Insulation Systems, Inc.*, 450 F.Supp. 398, 403 (W.D.Ky.1978) ("... a key factor in weighing the strength of this state's connection is whether the cause of action arises out of defendant's attempts to benefit from the laws of Kentucky by entering the market here."); *See also Bowen v. Eastside Jersey Dairy*, 521 S.W.2d 822, 823 (Ky.1975). K.R.S. 454.210(2)(a)3 does not apply, because the allegedly tortious acts took place outside of Kentucky.

feasor regularly does or solicits business within the state or has other substantial connection to the Commonwealth." *Pierce*, 787 S.W.2d at 706–07. The stricter requirements for establishing jurisdiction over out-of-state tortfeasors seem clearly intended to address due process concerns not present when a tortfeasor has acted entirely within the state. *Compare* K.R.S. 454.210(2)(a)3 *with* K.R.S. 454.210(2)(a)4. In effect, the legislature has designed the long-arm statute to ensure that non-resident defendants have "minimum contacts" with Kentucky "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Accordingly, a defendant whose conduct in the forum is covered by the long-arm statute will necessarily have "purposefully avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

However, the fact that a proper application of K.R.S. 454.210(2)(a) will simultaneously satisfy the requirements of due process does not obviate the need to apply its provisions in a manner faithful to the specific language chosen by the legislature. On the other hand, due process principles and precedents may in many circumstances assist a court with the faithful application of the specific provisions of the long-arm statute. Depending on which provision of K.R.S. 454.210(2)(a) is applicable in a given situation, a court may or may not find it appropriate to apply the long-arm statute without some recourse to a due process analysis. In some cases, a court will be able to determine whether there is personal jurisdiction based purely on an application of the express language of K.R.S. 454.210(2)(a). *See Jackson v. Wileman*,

*D.D.S.*, 468 F.Supp. 822, 823–24 (W.D.Ky. 1979) (out-of-state tortfeasor did not engage in "doing or soliciting of business... or derivation of substantial revenue" in the state). In other cases, a court seeking to apply a broadly worded provision of the long-arm statute will rely much more heavily on due process principles. *See Tube Turns Div. of Chemetron v. Patterson Co.*, 562 S.W.2d 99, 99–101 (Ky.Ct.App.1978) (scope of "transacting any business" determined with reference to 6th Circuit due process analysis). In still others, a court may find it appropriate to move back and forth between the language of the long-arm statute and a due process analysis. *See Pierce v. Serafin, M.D.*, 787 S.W.2d 705, 706–07 (Ky.Ct.App.1990) (applying 6th Circuit due process analysis and language of K.R.S. 454.210(2)(a)3–4). In all cases, however, Kentucky courts arguably have applied the clear directives of the long-arm statute modified only by the requirements of due process.[3]

## II.

■ Though Plaintiffs do not specifically address the requirements of the Kentucky long-arm statute, they make a number of factual allegations which might be relevant to establishing jurisdiction. Plaintiffs contend that between February and June of 1994, Continental sent criteria for use in a financial model and a list of contact persons at its local cable systems to Plaintiffs in Louisville, Kentucky. Plaintiffs also contend that Speedvision licenses programming to Primestar, HBO Direct and DirecTV, all of whom make Speedvision available to subscribers in Kentucky. Continental also has indirect links to Kentucky through its ownership interests in Primestar, potentially deriving revenue indirectly from subscriptions to Speedvision in Kentucky. Finally, both Speedvision and Primestar maintain web sites which can be reached by Internet users in Kentucky.[4]

**3.** The fact that the requirements of K.R.S. 454.210(2)(a) are theoretically satisfied by the same minimum contacts required by due process should not be taken to mean that the long-arm statute is superfluous. First, it is possible to decline jurisdiction based only on the language of the statute, without recourse to a due process analysis. Second, the specific provisions of the statute in many cases will provide courts with additional guidance or lend clarity to factual situations not previously encountered in our due

process cases. Of course, merely satisfying the plain language of the statute does not obviate the need to check this result against the requirements of due process.

**4.** It is clear that the Defendants contacts with the forum are not sufficiently systematic or continuous for an assertion of general jurisdiction over them. *See Third Nat. Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir.1989).

The Court concludes that these contacts with Kentucky individually and collectively fail to meet the exacting requirements of K.R.S. 454.210(2)(a)4. First, there is scant evidence that either Defendant "does or solicits" business in Kentucky. Neither Continental nor Speedvision has any business operations whatsoever within Kentucky and neither has engaged in any advertising in the state. The financial modeling criteria and contact lists sent by Continental to Plaintiffs in Louisville cannot reasonably be characterized as solicitation of business. Moreover, the mere fact that Internet users in Kentucky can view advertisements on web pages provided by Speedvision and Primestar falls far short of demonstrating that Defendants advertise in Kentucky. *See, e.g., Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119, 1124 (W.D.Pa.1997) ("[a] passive web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction."); *Cf. Kennedy v. Ziesmann,* 526 F.Supp. 1328, 1331 (E.D.Ky.1981) ("Nor may the mere carrying of a telephone listing, without additional advertising or other solicitation, amount in and of itself to regular solicitation of business such as to make ... defendant subject to suit under the long-arm statute of a neighboring state where the directory is distributed.")

Similarly, Plaintiffs have pleaded no facts demonstrating that either Speedvision or Continental derives "substantial revenue" from "goods used or consumed or services rendered" in Kentucky. It is undisputed that Speedvision licenses its programming to distributors including Primestar, HBO Direct, and DirecTV who may, in turn, sell programming to Kentucky subscribers. However, Speedvision sells no programming directly to television viewers in Kentucky and has no control over where licensees sell its programming. At best, Continental's ownership interest in Primestar generates revenue only indirectly through subscriptions to Primestar in Kentucky, and there is no indication that the amounts generated, if any, are substantial. Indeed, the available facts indicate that Speedvision has, to date, derived a negligible amount of revenue from the distribution of its programming in Kentucky.[5]

■ Moreover, the Plaintiffs seem unable to demonstrate a sufficient causal link between their claims and Defendants' alleged contacts with the state. Even if there were facts sufficient to support the inference that Defendants conducted or solicited business in Kentucky, or derived significant revenue from services rendered in the state, Plaintiffs must show that their injuries "arose out of" these activities, as required by K.R.S. 454.210(2)(a)4. However, Plaintiffs' theories of injury, as applied to the remaining counts of the Complaint, are all rooted in allegations that Cox, Comcast, Continental, and Speedvision combined and conspired to use confidential business information acquired from the Auto Channel to furnish programming format and content for Speedvision. The allegedly wrongful acts giving rise to these claims bear no relationship to any business or advertising presently (or previously) engaged in, or revenue derived by, Defendants in Kentucky. The Defendants' in-state activities are at most incidental to the conduct underlying the cause of action. *See Kennedy v. Ziesmann,* 526 F.Supp. 1328, 1331 (E.D.Ky.1981) ("Here, the cause of action alleged, if any exists, arose in Ohio when the anesthetic was administered, and the telephone calls [by the doctor to Kentucky] were only incidental."). Indeed, it appears that the allegedly tortious acts causing Plaintiffs' injuries would necessarily have occurred prior to the time that Speedvision was first distributed in Kentucky.

## III.

■ The due process analysis followed in the 6th Circuit only bolsters the Court's conclusion that Plaintiffs' causes of action do not "arise from" Defendant's alleged activities in Kentucky. The Sixth Circuit has incorporated the "arising from" requirement into its three-part test for determining whether a nonresident defendant has the requisite mini-

---

5. Speedvision presently receives about $ 400 per month from retransmission of its programming in Kentucky. This amounts to less than four hundredths of one percent of Speedvision's total monthly revenues.

mum contacts to give rise to personal jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. *Second, the cause of action must arise from the defendant's activities there.* Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine Co. v. Mohasco Industries, Inc.,* 401 F.2d 374, 381 (6th Cir.1968) (emphasis added). The necessary degree of relatedness for the plaintiffs claims to "arise from" the defendant's contacts has never been precisely determined. *See, e.g., Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415 n. 10, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). However, the Sixth Circuit requires that the cause of action have at least a "substantial connection" to the defendant's in-state activities. *Southern Machine,* 401 F.2d at 384 n. 27; *Third Nat. Bank v. WEDGE Group, Inc.,* 882 F.2d 1087, 1091 (6th Cir.1989). In many cases, it is easy discern a direct relationship between the cause of action and the defendant's contacts with the forum. For example, in an action for breach of contract, it necessarily follows that the cause of action arises directly out of the contract entered into by the plaintiff and the nonresident defendant. *See, e.g., In-Flight Devices Corp. v. Van Dusen Air, Inc.,* 466 F.2d 220, 229 (6th Cir.1972) (contract entered into by nonresident defendant "is necessarily the very soil from which the action for breach grew.").

In this case, the statutorily required relationship between Plaintiffs' tort claims and Defendants' minimal contacts to Kentucky is so attenuated as to be *de minimus.* The only possible link is that some Kentucky customers of Primestar, HBO Direct, or DirecTV may be subscribing to Speedvision, the network that Defendants allegedly copied from the Auto Channel.[6] However, this slight degree of relatedness is not sufficient to support personal jurisdiction over the Defendants. The fact that Defendants could profit indirectly from sales of Speedvision's programming in Kentucky is simply not one of the "operative facts of this controversy." *Southern Machine,* 401 F.2d at 384. Indeed, the underlying factual basis of the Plaintiffs' claims does not depend on whether Speedvision is presently available to subscribers in Kentucky or any other state. The validity or invalidity of these claims does not seem to depend on anything these Defendants have done (or may be doing) in Kentucky.

Overall, one cannot escape the impression that neither Speedvision nor Continental have acted purposefully within the state in any consequential manner. A comparison of their actions with those in *Third Nat. Bank in Nashville v. WEDGE Group, Inc.,* 882 F.2d 1087 (6th Cir.1989) is instructive. For example, Wedge had meetings and negotiations in the forum state; these Defendants did not. *Id.* at 1090. Wedge held substantial deposits in the forum; these Defendants did not. *Id.* Those comparisons alone are sufficient to differentiate Wedge's contacts as "purposefully availing" and the Defendant's contacts as "random" or "attenuated." In the Court's view, the differences are significant enough to justify different results.

## IV.

■ The Court's analysis concludes that Plaintiffs' causes of action against the Defendants lack the requisite minimum contacts with Kentucky for this Court to assume jurisdiction under K.R.S. 454.210(2)(a). Nonetheless, the purpose of the Kentucky long-arm statute is to ensure that courts comply with due process, not to deny arbitrarily an injured party his or her day in court. Indeed, Kentucky has a legitimate interest in seeing that its citizens receive compensation for their injuries, especially when, as here, the brunt of the injury may be felt in Kentucky, that is, upon a Kentucky corporation. However, without the requisite contacts, Kentucky's interest in providing a home fo-

---

**6.** Though Continental's delivery of criteria and lists to Louisville may be more directly related to the cause of action, these contacts fail the threshold requirement of the long-arm statute that the contacts fall into the category of "doing or soliciting of business," "derivation of substantial revenue," or other "persistent course of conduct." K.R.S. 454.210(2)(a)4.

rum for its own citizens is insufficient to carry the day.

This Court is satisfied that there are other forums in which it would be fair and appropriate to litigate Plaintiffs' claims against the Defendants. Speedvision is a Delaware corporation with its principal place of business in Stamford, Connecticut. Continental is a Delaware corporation with its principal place of business in Boston, Massachusetts. Plaintiffs allege that Speedvision and Continental conspired with others to steal the programming format and content of the Auto Channel. Such a scheme would require a substantial amount of planning and coordination. Much of the alleged wrongdoing is highly likely to have taken place in Connecticut, Massachusetts, or Delaware. It would not be unreasonable to require Plaintiffs, who were pursuing deals with nonresidents across state lines, to seek recovery in those jurisdictions where the conduct giving rise to their injuries occurred.[7] Consequently, the Court concludes that its decision has results which are fair to the movants without being unfair to Plaintiffs overall.

Since Defendants' motions have been resolved on the issue of personal jurisdiction, the Court need not reach the venue issue. The Court will issue an order consistent with this memorandum opinion.

### ORDER

Defendants, Speedvision Network, LLC and Continental Cablevision, Inc., have moved this Court to dismiss Plaintiffs' claims against them for lack of personal jurisdiction and improper venue. Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendants motions are SUSTAINED and the claims against Speedvision and Continental contained in counts 10 and 11 are DISMISSED WITHOUT PREJUDICE.

---

7. Presumably, Delaware would be a convenient forum, since both Speedvision and Continental are residents of the state.