NOBLE, J., joins.

Jo Ann **BONDURANT**, Appellant,

v.

**ST. THOMAS HOSPITAL; K. Tyson Thomas, M.D.; The Surgical Clinic, PLLC; and Martha P. Leonard, M.D.,** Appellees.

No. 2010–CA–000166–MR.

Court of Appeals of Kentucky.

Sept. 9, 2011.

Rehearing Denied Dec. 21, 2011.

Discretionary Review Denied by Supreme Court June 13, 2012.

---

Donna Thornton–Green, Paducah, KY, for appellant.

Louis Miller Grumley, Paducah, KY, for appellees.

Before ACREE, CAPERTON and CLAYTON, Judges.

## OPINION

ACREE, Judge:

The appellant, Jo Ann Bondurant, appeals an order of the McCracken Circuit Court dismissing her claims against The Surgical Clinic, PLLC; K. Tyson Thomas, M.D.; St. Thomas Hospital; and Martha P. Leonard, M.D.; (collectively, hereinafter, the "Tennessee appellees") for lack of personal jurisdiction. For the following reasons, we affirm.

### I. *Facts and Procedures*

On July 31, 2008, Bondurant, a Kentucky resident, was admitted to Lourdes Hospital in Paducah, Kentucky. Following a consultation at Lourdes Hospital, it was determined that Bondurant required additional medical treatment. Thus, Lourdes Hospital arranged for a Tennessee physician to consult and to evaluate Bondurant at St. Thomas Hospital in Nashville, Tennessee. While at St. Thomas Hospital, Dr. Thomas performed surgery on Bondurant. St. Thomas Hospital discharged Bondurant on August 8, 2008, and made arrangements for Bondurant to be transferred via ambulance to Superior Care Homes, Inc., a nursing home in Paducah, Kentucky.

Preliminary to Bondurant's discharge, St. Thomas Hospital employees prepared and compiled medical and administrative paperwork for use by the medical professionals at Superior Care Homes. Included among those records was an incorrect, high dosage indicator for the medication Methotrexate. Subsequently, a Superior Care Homes' employee handwrote a prescription order in accordance with that incorrect dosage of Methotrexate, and faxed the prescription to Med–Care Pharmacy in Paducah, Kentucky, to be filled. The employee also mailed the same incorrect prescription to Jesse Wallace, M.D., for signatory authorization, which Dr. Wallace provided.

The error in dosage was discovered when Bondurant began experiencing progressively increasing gastrointestinal problems and general weakness. Bondurant required hospitalization to treat the toxic effects of the overdose of Methotrexate.

Bondurant subsequently filed suit in McCracken Circuit Court against several defendants, including the Tennessee appellees, alleging that the Tennessee appellees had deviated from the applicable standard of care by erroneously prescribing an incorrect dosage of medication to Bondurant, thereby causing Bondurant extreme physical and emotional pain, and rendering Bondurant permanently disabled. The Tennessee appellees promptly filed a joint motion to dismiss arguing that there were insufficient contacts with Kentucky for the trial court to exercise personal jurisdiction over the Tennessee appellees. The trial court granted the Tennessee appellees' motion. In its order, the trial court examined Kentucky's "long-arm statute" and found insufficient minimum contacts with Kentucky to subject the Tennessee appellees to personal jurisdiction.

## II. *Analysis*

■ It is well established in Kentucky that, when considering a motion to dismiss under Kentucky Rules of Civil Procedure (CR) 12.02, the pleadings should be liberally construed in a light most favorable to the plaintiff and all allegations taken in the complaint to be true. *Mims v. Western–Southern Agency, Inc.,* 226 S.W.3d 833, 835 (Ky.App.2007). Because the issue of personal jurisdiction is a legal question to be answered in light of those allegations, we review the issue *de novo. Appalachian Reg'l Healthcare, Inc. v. Coleman,* 239 S.W.3d 49, 53–54 (Ky.2007) (citations omitted).

■ Bondurant contends that the McCracken Circuit Court has jurisdiction over the Tennessee appellees because the Tennessee appellees caused a tortious injury in Kentucky by ordering care on discharge, to be implemented upon admission to a Kentucky nursing home, which included administering an overdose of medication. Thus, Bondurant's argument on appeal is that the circuit court erred by dismissing the Tennessee appellees for lack of jurisdiction.

Initially, Bondurant relies on Kentucky's long-arm statute, Kentucky Revised Statutes (KRS) 454.210(2)(a)3. and 4., for her argument that Kentucky has specific personal jurisdiction over these Tennessee appellees. The long-arm statute provides, in relevant part:

(2)(a) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:

. . . .

3. Causing tortious injury by an act or omission in this Commonwealth;

4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he reg-

ularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth;

Bondurant then cites *Cummings v. Pitman,* 239 S.W.3d 77 (Ky.2007), and argues that "the statutory requirements have merged into the federal due process analysis" and, therefore, this Court "need only determine whether the assertion of personal jurisdiction violates constitutional due process." This is incorrect.

Recently, the Kentucky Supreme Court in *Caesars Riverboat Casino, LLC v. Beach,* 336 S.W.3d 51 (Ky.2011), clarified that a two-step process should be used to determine whether personal jurisdiction exists, specifically overruling *Cummings* and other precedent that had collapsed this two-step process into a single inquiry of whether due process permits the exercise of personal jurisdiction. The Court explained,

> [T]he proper analysis of long-arm jurisdiction over a nonresident defendant consists of a two-step process. First, review must proceed under KRS 454.210 to determine if the cause of action arises from conduct or activity of the defendant that fits into one of the statute's enumerated categories. If not, then *in personam* jurisdiction may not be exercised. When that initial step results in a determination that the statute is applicable, a second step of analysis must be taken to determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights. To the extent *Wilson* [*v. Case,*

85 S.W.3d 589 (Ky.2002) ], *Cummings,* and like cases hold otherwise, they are overruled.

*Id.* at 57.

Thus, we first proceed under KRS 454.210(2)(a) to determine whether Bondurant's cause of action arises from conduct or activity on the part of the Tennessee appellees that fits into one of the statute's enumerated categories.

Returning to the long-arm statute, Bondurant maintains that jurisdiction is proper under subsections KRS 454.210(2)(a)3. and 4. because the Tennessee appellees caused a tortious injury in Kentucky by ordering care upon discharge, to be implemented upon admission to a Kentucky nursing home, which included administering an overdose of medication.

However, controlling law is clear that these contacts are insufficient to invoke personal jurisdiction over a nonresident defendant in Kentucky. In *Tube Turns Div. of Chemetron Corp. v. Patterson Co., Inc.,* 562 S.W.2d 99 (Ky.App.1978), a Kentucky corporation sued a Colorado corporation to recover the balance due on a contract for payment of goods. The court noted the following details regarding the nonresident defendant's contacts with Kentucky:

> Patterson is a Colorado corporation. The initial contact with Patterson was made in Colorado by Tube Turns's Colorado representative. Subsequent negotiations were conducted by mail and telephone between Patterson in Colorado and Tube Turns's Louisville office. Patterson's order was accepted by Tube Turns in Louisville.
>
> Patterson has no certificate of authority to transact business in Kentucky. It has never maintained an office, a post office box, or telephone directory listing for the purpose of transacting business

in Kentucky. Patterson has no employees or agents in Kentucky, and it owns no property in Kentucky. Its employees and agents never physically entered Kentucky for the purpose of negotiating contracts or soliciting any business. *Id.* at 99–100. The court ultimately concluded that "it would be unreasonable for Kentucky to exercise jurisdiction over Patterson solely on the basis of negotiations by telephone and mail which culminated in the acceptance of a single order in Louisville." *Id.* at 100.

Additionally, a Kentucky federal court reached the same conclusion when it determined it could not exercise personal jurisdiction over a nonresident defendant in *Papa John's Int'l, Inc. v. Entm't Mktg. & Commc'ns Int'l, Ltd.,* 381 F.Supp.2d 638 (W.D.Ky.2005). In *Papa John's,* a dispute arose over marketing services that were being provided to Papa John's by a New York corporation with its principal place of business in Connecticut. *Id.* at 640. The court noted that neither defendant conducted regular business in Kentucky or owned any property in Kentucky. *Id.* The court further noted that at no time during the business relationship did the defendants physically enter Kentucky; instead, "Papa John's employees in Kentucky communicated via telephone, mail and email with Defendants in New York and Connecticut on the development of the marketing campaign." *Id.* In declining to exercise personal jurisdiction, the court held:

> There was virtually no evidence that Defendants solicited business in Kentucky or that they actually performed work in Kentucky. Plaintiffs produced no evidence that Defendants derived substantial revenues from business in Kentucky. Whatever agreement was reached, was not reached in Kentucky.... The facts here do not present the case of a corporation reaching out to create an on-going series of relationships with a Kentucky customer involving numerous billings, shipment of product to or from the state and substantial sums of money.

*Id.* at 643–44 (internal citations omitted).

With respect to Bondurant's argument that the court should exercise personal jurisdiction because the Tennessee appellees were aware that the services they performed in Tennessee would impact their patient whose follow-up care would be accomplished in Kentucky, we note that in *Kennedy v. Ziesmann,* 526 F.Supp. 1328 (E.D.Ky.1981), the court refused to extend personal jurisdiction to a doctor who treated a Kentucky resident on the mere allegation that his work would have some effect in Kentucky.

In *Kennedy,* the physician resided and practiced in Ohio, and his private medical practice was incorporated in Ohio. He was not on staff at any Kentucky hospitals, did not own property in Kentucky, and did not have a bank account in Kentucky. *Id.* at 1329. He did, however, list his practice in directories that circulated in Kentucky and admitted to having operated on a few other Kentucky patients during the last five years. *Id.* Similar to Bondurant, the plaintiff in *Kennedy* urged the court to extend personal jurisdiction to the defendant because he " 'purposefully' caused a 'consequence' in Kentucky, since he knew plaintiff would return there bearing any ill effects his treatment may have caused her." *Id.* at 1330. In rejecting the plaintiff's theory, the court concluded that "[a]lthough [the defendant] might have foreseen that his treatment of plaintiff might have some indirect effects in Kentucky, more than that is required" for a court to exercise personal jurisdiction over a nonresident defendant. *Id.* at 1332. Here, unlike the physician in *Kennedy,* the Tennessee appellees are not listed in any directories in Kentucky and do not other-

wise solicit business here.[1] The mere fact that the appellees may have known that their actions in Tennessee might have an effect in Kentucky is alone insufficient to exercise personal jurisdiction.

Finally, Bondurant's claim that she should not have to travel to Tennessee to litigate her claims against the appellees is unpersuasive. She has chosen to assert claims against Tennessee defendants licensed only in Tennessee, whose offices, affiliates, and employees are located in Tennessee, for services allegedly negligently performed in Tennessee. The fact that it may be inconvenient for Bondurant to file suit in Tennessee is not dispositive of the personal jurisdiction issue before us. *See Tube Turns*, 562 S.W.2d at 100 (holding that the convenience of location is not enough to satisfy due process).

The circumstances of the case at bar are similar to those in *Tube Turns, Papa John's,* and *Kennedy.* Bondurant, whether directly or indirectly, engaged the Tennessee appellees to perform medical services in Tennessee. The appellees engaged in no act or omission in Kentucky. Therefore, KRS 454.210(2)(a)3. is inapplicable.

KRS 454.210(2)(a)4. is equally inapplicable. The record is devoid of evidence that any Tennessee appellee "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth[.]"

Since we hold that personal jurisdiction cannot be exercised under KRS 454.210(2)(a)3. or 4., we need not proceed to an analysis of whether the exercise of personal jurisdiction in this case violates federal due process. *Caesars*, 336 S.W.3d at 57. Thus, the trial court did not err by dismissing Bondurant's claims against the Tennessee appellees.[2]

### III. *Conclusion*

For the foregoing reasons, we affirm the McCracken Circuit Court's order dismissing Bondurant's claims against the Tennessee appellees for want of personal jurisdiction.

ALL CONCUR.

---

1. The circuit court's order stated: "The TN defendants have pled, and Ms. Bondurant has not refuted, that these defendants do not advertise in Kentucky, they do not have offices in Kentucky, they do not have Kentucky telephone numbers, they do not have post office boxes in Kentucky, none conduct business in Kentucky, there are no series of transactions in Kentucky, and they did not contact Ms. Bondurant in Kentucky, nor is there a continuing relationship with her."

2. Though the circuit court's decision to dismiss Bondurant's claims against the appellees was based on different reasoning (the exercise of personal jurisdiction violates the appellees' federal due process rights), the rule is well settled that an appellate court may affirm a lower court for any reason supported by the record. *McCloud v. Commonwealth*, 286 S.W.3d 780, 786 fn. 19 (Ky.2009).